# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: LAMICTAL INDIRECT PURCHASER  ANTITRUST CONSUMER LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL INDIRECT PURCHASER ACTIONS | **DOCUMENT ELECTRONICALLY FILED**<br><br>No. 2:12-cv-05120-WHW-CLW<br><br>Return Date: March 7, 2016 |

---

### DEFENDANTS' JOINT
## MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c) and 12(h)(2)

---

**PATUNAS TARANTINO LLC**
24 Commerce Street, Suite 606
Newark, NJ 17102
(201) 390-0803

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

*Attorneys for Defendants Teva
Pharmaceuticals USA, Inc., and Teva
Pharmaceutical Industries Ltd.*

**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500

**PEPPER HAMILTON LLP**
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, Pennsylvania 19103
(215) 981-4000

*Attorneys for Defendant
GlaxoSmithKline LLC*

# TABLE OF CONTENTS

I.    Introduction .................................................................................... 1

II.   Factual Background ......................................................................... 3

      A.   The Patent Litigation and Settlement .................................... 3
      B.   GSK and Teva's Public Disclosures Regarding the Settlement .......... 5
      C.   Plaintiffs' Claims ................................................................. 7

III.  Argument ......................................................................................... 8

      A.   Standard of Review .............................................................. 8
      B.   Plaintiffs' State-Law Claims Are Barred by the Applicable
           Statutes of Limitations. ........................................................ 9

           1.   The Fraudulent Concealment Doctrine Cannot Save
                Plaintiffs' Claims. .................................................... 12
           2.   Applicable State Law Does Not Recognize Injury by
                Continuing Violation Under These Circumstances. ................ 20

      C.   Plaintiffs' New York Consumer Protection Claim Also Fails
           Because Plaintiffs Have Not Alleged Any Deceptive,
           Consumer-Oriented Acts that Occurred in New York. ..................... 27
      D.   Plaintiffs' Michigan Claims Also Fail Because Plaintiffs Fail to
           Plead Any Connection to Michigan at All. ................................ 31
      E.   Plaintiffs' Unjust Enrichment Claim Must be Dismissed
           Because There is No Federal Common Law of Unjust
           Enrichment. ......................................................................... 34
      F.   Plaintiffs' Sherman Act Claims Brought Under the Declaratory
           Judgment Act Fail Because There Is No "Case or Controversy." ..... 37

IV.   Conclusion ..................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 Mich. App. LEXIS 433 (Mich. Ct. App. Feb. 28, 2008) ...................................................35

*In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224 (D. Conn. 2015) ....................34

*Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429 (3d Cir. 2000) ......................8

*Allen v. Similasan Corp.*, No. 12-cv-0376, 2013 U.S. Dist. LEXIS 139874 (S.D. Cal. Sept. 27, 2013) ..............................................................................26, 27

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................................33

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412 (Cal. Ct. App. 2004)........................................................................................25

*Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871 (Cal. 2013)......11, 20, 24, 25, 26

*In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544 (E.D. Pa. 2007) .....................................................................................................29, 30, 31

*Bangura v. City of Phila.*, 338 F. App'x 261 (3d Cir. 2009)....................................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..............................................8

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) ........................................................32

*Boyd v. Freeman*, No. B253500, 2015 Cal. App. Unpub. LEXIS 3449 (Cal. Ct. App. May 19, 2015) ......................................................................................25

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ..............................4

*Bullard v. New York*, 763 N.Y.S.2d 371 (N.Y. App. Div. 2003) .....................22, 23

*In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ................................................................................................10, 15, 16

*Carmona v. Spanish Broad. Sys., Inc.* No. 08 Civ 4475, 2009 U.S. Dist. LEXIS 26479 (S.D.N.Y. Mar. 30, 2009)............................................................35

*In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003)........................................................................................10, 16

*City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834 (N.Y. 2009)....28, 29

*Corsello v. Verizon New York Inc.*, 967 N.E.2d 1177 (N.Y. 2012).........................9

*Corzine v. 2005 Def. Base Closure & Realignment Comm'n*, 388 F. Supp. 2d 446 (D.N.J. 2005) ..................................................................................................37

*Cunningham v. Bayer AG*, No. 603820/00, 2003 N.Y. Misc. LEXIS 2011 (N.Y. Sup. Ct. Oct. 15, 2003) ......................................................................29, 30

*D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006) ...........................................................................................................38

*Davis v. Grusemeyer*, 996 F.2d 617 (3d Cir. 1993)..................................................8

*DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941 (C.D. Cal. 2013)......20, 26

*Draws v. Levin*, 52 N.W.2d 180 (Mich. 1952) .......................................................13

*Driscoll v. New York*, 650 F. Supp. 1522 (S.D.N.Y. 1987)....................................14

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 U.S. Dist. LEXIS 142466 (D.N.J. Oct. 2, 2013) ..33, 35

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)..............................................33

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ...........................................9, 34

*In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409 (E.D. Pa. 2009)................33, 35

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) ..........................................21, 26

*Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078 (N.Y. 2001)...............11

*Garg v. Macomb County Comm. Mental Health Svs.*, 696 N.W.2d 646 (Mich. 2005) ............................................................................................................21

*Golden v. Zwickler*, 394 U.S. 103 (1969) ..............................................................37

*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002) ..................................31

*Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)..................................................9, 13

*Hameed v. IHOP Franchising LLC*, 520 F. App'x 520 (9th Cir. 2013)..................25

*Hill v. Roll Int'l. Corp.*, 128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011)................9, 35

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)............................................38, 37

*Jack Kent Cooke, Inc. v. Saatchi & Saatchi N. Am.*, 635 N.Y.S.2d 611 (N.Y. App. Div. 1995) ......................................................................14, 20

*Long v. Walt Disney Co.*, 10 Cal. Rptr. 3d 836 (Cal. Ct. App. 2004) ..............13, 19

*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 136 Cal. Rptr. 3d 788 (Cal. Ct. App. 2012)..........................................................................11

*In re Magnesium Oxide Antitrust Litig.*, No. 10-cv-5943, 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011) ...............................................36

*Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 769 N.W.2d 234 (Mich. Ct. App. 2009).....................................................20, 21

*Marino v. Countrywide Fin. Corp.*, No. 14-56206, 602 F. App'x 403 (9th Cir. May 18, 2015)...................................................................26

*Mark K. v. Roman Catholic Archbishop of Los Angeles.*, 79 Cal. Rptr. 2d 73 (Cal. App. 1998) ..........................................................................14, 20

*McKelvey v. Boeing N. Am., Inc.,* 86 Cal. Rptr. 2d 645 (Cal. Ct. App. 1999) ........11

*Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ............................................................................................35

*Meyer and Anna Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900 (Mich. Ct. App. 2005)....................13, 14, 19, 20

*Morgan v. Regents of Univ. of Cal.*, 105 Cal. Rptr. 2d 652 (2000)........................27

*Nat'l R.R. Passenger Crop. v. Morgan*, 536 U.S. 101 (2002)................................26

*NBCUniversal Media, LLC v. Superior Court of Los Angeles*, 171 Cal. Rptr. 3d 1 (Cal. Ct. App. 2014)................................................................24, 26

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015)........................33

*Nelson v. Ho*, 564 N.W.2d 482 (Mich. Ct. App. 1997) ..........................................11

*New York v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8 (N.Y. App. Div. 2007) ...........................................................................................29, 31

*In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231 (D. Mass. 2014) ..................................................................10, 16, 33, 34, 36

*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367 (D. Mass. 2013) .................................................................................14, 22

*Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014) ...............................13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995)...............................................................28

*Oyster Bay v. J.D. Posillico, Inc.*, 4 N.E.3d 944 (N.Y. 2013)................................23

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) .................................................................29, 30, 33, 34, 35

*Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496 (N.Y. App. Div. 2006)...............30

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................32

*Pike v. N.Y. Life Ins. Co.*, 901 N.Y.S.2d 76 (N.Y. App. Div. 2010) ......................23

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012) ................................................................................29, 36

*In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654 (E.D. Pa. 2013) ................................................................................11, 14

*Putter v. N. Shore Univ. Hosp.*, 858 N.E.2d 1140 (N.Y. 2006) .......................13, 19

*Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200 (1st Cir. 2015) ...........................................................................13

*Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949)..................13

*Reading Int'l Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003) ................................................................................35

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ..........31, 34

*Richstone v. Everbank Reverse Mortgage LLC*, 910 N.Y.S.2d 408, 2009
 N.Y. Misc. LEXIS 3651 (N.Y. Sup. Ct. 2009)...................................................28

*Robare v. Fortune Brands, Inc.*, 833 N.Y.S.2d 753 (N.Y. App. Div. 2007).....13, 19

*Ryan v. Microsoft Corp.*, No. 14-CV-04634, 2015 U.S. Dist. LEXIS 47753
 (N.D. Cal. Apr. 10, 2015) ...........................................................................11, 24

*Sanofi, S.A. v. Med-Tech Veterinarian Prods., Inc.*, 565 F. Supp. 931 (D.N.J.
 1983) ................................................................................................................18

*Selkirk v. New York*, 671 N.Y.S.2d 824 (N.Y. App. Div. 1998) ......................20, 22

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline,
 PLC*, 263 F.R.D. 205 (E.D. Pa. 2009) ...............................................31, 33, 35, 34

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline,
 PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) .........................................................31

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)..............................37

*Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892 (N.Y. 1999) ......................30

*Thomas v. City of Oneonta*, 934 N.Y.S.2d 249 (N.Y. App. Div. 2011)............22, 23

*Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16 (N.Y. App.
 Div. 2009) ........................................................................................................11

*Trentadue v. Gorton*, 738 N.W.2d 664 (Mich. 2007)............................................11

*Turbe v. Gov't of Virgin Islands*, 938 F.2d 427 (3d Cir. 1991)................................8

*Underwood v. Stephen C. Albery*, No. 292151, 2010 Mich. App. LEXIS
 2339 (Mich. Ct. App. Dec. 7, 2010) ....................................................................9

*United Food and Commercial Workers Local 1776 & Participating
 Employers Health and Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F.
 Supp. 3d 1052 (N.D. Cal. 2014) ...........................................................33, 36, 34

*United States v. Dentsply Int'l, Inc.*, No. 99-005, 2001 U.S. Dist. LEXIS
 9057 (D. Del. Mar. 30, 2001) .......................................................................14, 22

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 109 (9th Cir. 2003).................................8

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)................................................13

*Waterman v. Mackenzie*, 138 U.S. 252 (1891) ......................................................18

*In re Wellbutrin XL Antitrust Litig.*
    260 F.R.D. 143 (E.D. Pa. 2009)............................................................33, 34, 35

*Wender v. Gilberg*, 716 N.Y.S.2d 40 (N.Y. App. Div. 2000) ...............................11

*Williams v. Barclays Capital, Inc.*, No. 653785/2012, 2015 N.Y. Misc.
    LEXIS 991 (N.Y. Sup. Ct. Mar. 31, 2015)........................................................31

*Wingspan Records, Inc. v. Simone*, 12 Civ. 2172, 2014 U.S. Dist. LEXIS
    69718 (S.D.N.Y. May 15, 2014) ......................................................................10

*Zumpano v. Quinn*, 849 N.E.2d 926 (N.Y. 2006)..................................................13

STATUTES

28 U.S.C. § 2201(a) .................................................................................................37

Cal Bus. & Prof. Code § 16750.1 ............................................................................10

Cal Bus. & Prof. Code § 17208 ...............................................................................10

Cal. Code Civ. P. § 340.8(c)(2) ...............................................................................11

Clayton Act § 4, 15 U.S.C. § 15 ..............................................................................37

Clayton Act § 16, 15 U.S.C. § 26 ............................................................................38

Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-
    417, 98 Stat. 1585 (1984) ................................................................................3

Mich. Comp. Laws § 445.772...................................................................................31

Mich. Comp. Laws § 445.773...................................................................................31

Mich. Comp. Laws § 445.781(2) ..............................................................................9

Mich. Comp. Laws § 600.5827.................................................................................11

N.Y. Gen. Bus. Law § 340(5) ...................................................................................9

N.Y. General Business Law § 349....................................................................passim

**OTHER AUTHORITIES**

Black's Law Dictionary 938 (8th ed. 2004) ..............................................18

Federal Rule of Civil Procedure 9(b)........................................................8

Federal Rule of Civil Procedure 12(c) and 12(h)(2)................................38

Federal Rule of Civil Procedure 12(h)(2) ...............................................38

## I.   INTRODUCTION

Carolyn McAnaney, a citizen of New York, and two health and welfare funds located in Ohio and California ("Plaintiffs"), filed complaints challenging a settlement between GSK and Teva that resolved patent infringement litigation over GSK's patented drug Lamictal.   The parties settled in February 2005, and Teva received FDA approval to launch its generic lamotrigine products in the summer of 2006.   Plaintiffs sued in the late summer and fall of 2012—seven and a half years after the settlement was executed, and at least two years too late.

Plaintiffs, purporting to represent several classes of indirect purchasers of lamotrigine, claim that the settlement violated New York, Michigan, and California state antitrust and consumer protection laws because it included two alleged reverse payments: (1) revenues resulting from Teva's early sale of lamotrigine chewables, which began within a few months of the settlement agreement, and (2) exclusive licenses to sell generic lamotrigine tablets and chewables, which precluded GSK from launching an authorized generic during the license terms.   Those reverse payments, Plaintiffs claim, impermissibly delayed Teva's sale of generic lamotrigine, and as a result, consumers paid more for lamotrigine than they would have in a market with earlier generic competition.

Plaintiffs' claims in Counts Four through Ten are state-law claims, and as such, they must stand or fall under state law.   Plaintiffs filed their claims

years after the applicable state-law statutes of limitations expired.  While Plaintiffs try to skirt this fundamental deficiency by suggesting that Defendants fraudulently concealed their conduct, the Complaint itself makes clear that Defendants *affirmatively disclosed* the very facts Plaintiffs claim were concealed—including that the settlement allowed Teva to compete by selling lamotrigine chewables at least as early as June 2005 and that the licenses were exclusive, barring GSK from selling an authorized generic.  In any event, Plaintiffs could have discovered any claims through reasonable diligence.  Further, Plaintiffs' allegations that they "were harmed and suffered separate injuries and claims" every time a member of the class purchased Lamictal tablets does not toll the applicable statutes of limitations.  Michigan has affirmatively rejected the so-called "continuing violation" doctrine, and New York and California do not apply the doctrine to allegations that Plaintiffs were injured by a discrete, independently actionable overt act, like the execution of a settlement agreement.

Not only are Plaintiffs' claims too late, they are also fatally deficient. Plaintiffs' New York consumer protection claim (Count Five) falls short because they have not alleged that the Defendants engaged in deceptive, consumer-oriented acts, nor do they claim that any allegedly deceptive conduct occurred in New York. Plaintiffs' Michigan claims (Counts Six and Seven), and their unjust enrichment claim (Count Ten), to the extent it is brought under Michigan law, fail because

Plaintiffs have not pled any connection to Michigan at all.  Plaintiffs' claim under "the laws of unjust enrichment across all the states and territories in the United States" (Count Ten) is not tethered to the law of any particular state, and Plaintiffs lack standing to bring nationwide claims.  And finally, because this case does not present a justiciable controversy involving any violation of the Sherman Act, Plaintiffs' request for a declaratory judgment (Counts One, Two, and Three) must be dismissed.

For all of these reasons, Defendants are entitled to judgment in their favor on the pleadings, and Plaintiffs' claims should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

### A.   The Patent Litigation and Settlement

In April 2002, under procedures established by the Hatch-Waxman Act,[1] Teva filed Abbreviated New Drug Applications ("ANDAs") seeking approval to market generic versions of GSK's drug Lamictal in its regular ("tablets") and chewable dispersible ("chewables") forms.  (Compl. ¶ 3.)  Teva certified in its applications that its generics did not infringe U.S. Patent No. 4,602,017 ("the '017 patent"), the patent held by GSK that covered the active ingredient in and certain methods of using lamotrigine.  (*Id.*)  The '017 patent was set to expire on July 22, 2008.  (*Id.* ¶ 59.)

---

[1] Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-*417,* 98 Stat. 1585 (1984) (commonly referred to as the Hatch-Waxman Act).

In August 2002, GSK sued Teva for infringement of the '017 patent. (*Id.* ¶¶ 65, 114.)  The parties litigated for more than two years in front of Judge John Bissell, United States District Judge in the District of New Jersey.  On the final day of a bench trial in early 2005, Judge Bissell found the first claim of the '017 patent invalid.  (Compl. ¶ 67.)  Judge Bissell entered a contemporaneous minute entry on the public docket memorializing that decision.  *See* Minute Entry, *SmithKline Beecham v. Teva Pharms.*, No. 02-3779, Dkt. No. 86 ("Court declared Claim One of the patent at issue is invalid.  Decision Reserved as to other claims.").

In mid-February, before Judge Bissell ruled on the remaining patent claims, the parties settled the litigation.  (Compl. ¶ 75.)  Under the settlement, GSK licensed Teva to sell generic chewables almost immediately.  (*Id.* ¶ 76.)  GSK also licensed Teva to sell generic tablets six months before the end of GSK's marketing exclusivity.  (Compl. ¶ 77; License and Supply Agreement, attached as Eakeley Decl. Ex. A, at §§ 11-12 (defining "Teva Generic Tablet Entry Date"); *id.* § 2.3.)[2]

---

[2] The Court may take judicial notice of the redacted version of the License and Supply Agreement, attached as Eakeley Declaration Exhibit A, because Plaintiffs base their claims upon its terms and it was filed publicly in a contract dispute between Defendants. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding a court may consider matters "integral to the claim"); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), (holding a court may consider matters of public record, including documents filed in court proceedings, and indisputably authentic documents upon which the plaintiff bases its claims).

These licenses were exclusive.   (Compl. ¶¶ 12, 81, 83; License and Supply Agreement §§ 2.1-2.3.)

On April 4, 2005, GSK and Teva submitted a Stipulation and Order of Dismissal seeking dismissal of all claims and counterclaims in the patent litigation. (Compl. ¶ 87.)  Judge Bissell signed the stipulation and entered an order on the public docket withdrawing the bench ruling that invalidated the first claim of the '017 patent.  (*Id.*; *SmithKline Beecham v. Teva Pharms.*, No. 02-3779, Dkt. Nos. 88 (order withdrawing oral bench ruling of January 27, 2005) & 89 (order of dismissal).)

## B.    GSK and Teva's Public Disclosures Regarding the Settlement

On February 17, 2005—the day after the parties executed the Settlement Agreement and License and Supply Agreement—Teva issued a press release.  (Compl. ¶ 103.)  The press release explained

> that Teva may, under an ***exclusive*** royalty-bearing license from GSK and on a date not later than June 2005, distribute in the United States a generic version of lamotrigine chewable tablets (5 mg and 25 mg).  In addition, Teva was granted the ***exclusive*** right to manufacture and sell its own generic version of lamotrigine tablets (25 mg, 100 mg, 150 mg, and 200 mg) in the United States with an expected launch date in 2008.

*See* News Release, attached as Eakeley Decl. Ex. B (emphasis added).

GSK and Teva continued to make similar public disclosures regarding the settlement agreement in the years that followed.  Teva's Form 20-Fs for the

years 2005, 2007, and 2008 disclosed that (1) Teva had been granted "an exclusive royalty-bearing license to distribute generic lamotrigine chewable tablets (5 mg and 25 mg) in the United States no later than June 2005," and (2) that it had been granted the "exclusive right to manufacture and sell its own generic version of lamotrigine tablets (25 mg, 100 mg, 150 mg and 200 mg) in the U.S., with an expected launch in 2008 prior to patent expiry in July 2008 (plus six months of expected pediatric exclusivity)." (Compl. ¶¶ 109, 112.) GSK's Form 20-Fs for 2005 and 2006 contained similar language. (*Id.* ¶¶ 114, 116 (acknowledging that those filings indicated that GSK "granted Teva an exclusive royalty-bearing license to distribute in the USA a generic version of lamotrigine chewable tablets. In addition, Teva was granted the exclusive right to manufacture and sell Teva's own generic version of lamotrigine tablets in the USA with an expected launch date in 2008").) And Teva issued a press release on July 22, 2008 disclosing that the settlement agreement "granted Teva the exclusive right to manufacture and sell a generic version of Lamictal® during the six-month pediatric exclusivity which ends on January 22, 2009." (*Id.* at ¶ 113.)

Finally, on July 23, 2008, Teva publicly filed a complaint against GSK, alleging that GSK had breached the License and Supply Agreement by dropping the price of branded Lamictal to the generic rate to compete directly with Teva's generic product. *Teva Pharm. Indus. Ltd. v. SmithKline Beecham Corp.*,

No. 08-cv-3706 (DMC), Dkt. No. 1 (Jul. 23, 2008).  In that public pleading, Teva made clear its view that the exclusivity term of the License and Supply Agreement meant that "while GSK reserved the right to sell its Lamictal® tablets as branded products, GSK gave up the right for itself and anyone other than Teva to sell Lamictal® tablets or any other products as generic equivalents . . . for the limited duration of the[] license provisions."  *Id.* at ¶ 22; *accord id.* at ¶ 2.

### C.   Plaintiffs' Claims

On August 14, 2012, Plaintiffs Carolyn McAnaney, a citizen of New York, and International Brotherhood of Electrical Workers Local 38 ("Local 38"), a health and welfare fund located in Ohio, filed a complaint alleging that the settlement and licensing agreements violated the Sherman Act, antitrust and consumer protection laws in New York and Michigan, and nationwide unjust enrichment laws.  (Dkt. No. 1.)  On October 25, 2012, Plaintiff International Brotherhood of Electrical Workers Local 595 ("Local 595"), a health and welfare fund administered from Pleasanton, California, filed another complaint, alleging that the agreements also violated California's Cartwright Act and Unfair Competition Law.  (No. 2:12-cv-06721-WHW-CLW, Dkt. No. 1.)  This Court consolidated the two cases, and Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Complaint") on February 5, 2013.  (Dkt. No. 38.)

III.   **ARGUMENT**

   **A.   Standard of Review**

   This Court reviews a motion for judgment on the pleadings under the

same standard as a motion to dismiss.  *See Bangura v. City of Phila.*, 338 F. App'x

261, 264 (3d Cir. 2009) (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428

(3d Cir. 1991)).  To survive, Plaintiffs' Complaint must contain "enough facts to

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007).[3]  The Complaint also must contain well-pleaded facts

sufficient to support each element of each claim.  *Id.* at 555.  Where a complaint's

allegations undermine its legal theories, the complaint must be dismissed.  *See,*

*e.g.*, *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 447 n.12 (3d Cir. 2000).

Plaintiffs' claim that Defendants fraudulently concealed their conduct must meet

the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which

requires a party to "state with particularity the circumstances constituting fraud or

mistake."  Fed. R. Civ. P. 9(b); *see also Davis v. Grusemeyer*, 996 F.2d 617, 624

n.13 (3d Cir. 1993).

---

   [3] Although state law governs the substantive issues in this case, the pleading
standards applicable to Plaintiffs' claims are a matter of federal law, and are
governed by the Federal Rules of Civil Procedure.  *See Vess v. Ciba-Geigy Corp.
USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003) (holding that it is "established law"
that because the pleading standards under the Federal Rules do not "abridge,
enlarge or modify any substantive right," they apply to state-law causes of action).

**B.      Plaintiffs' State-Law Claims Are Barred by the Applicable Statutes of Limitations.**

Because Plaintiffs' state-law claims accrued more than four years before they filed their initial complaints, and because Plaintiffs have been on notice of those claims since the time of the settlement agreement, the applicable state statutes of limitations[4] bar their state-law claims in Counts Four through Ten.[5] Each applicable statute of limitations requires Plaintiffs to assert their claims within four years (or less) of accrual. *See* Mich. Comp. Laws § 445.781(2) (providing that a cause of action under the Michigan Antitrust Reform Act is barred if not commenced within four years of accrual); *Underwood v. Stephen C. Albery*, No. 292151, 2010 Mich. App. LEXIS 2339, *6-7 (Mich. Ct. App. Dec. 7, 2010) (noting that a Michigan unjust enrichment claim is subject to the limitations period of the analogous legal claim); N.Y. Gen. Bus. Law § 340(5) (providing that actions under New York's Donnelly Act must be commenced within four years of accrual); *Corsello v. Verizon New York Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012)

---

[4] State-law statutes of limitations apply to state-law causes of action in federal court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)).

[5] As explained in Section III(E), *infra*, Plaintiffs' attempt to plead unjust enrichment under federal common law or the laws of all fifty states fails as a matter of law. To the extent Plaintiffs attempt to plead that claim under Michigan or New York law, the applicable statutes of limitations bar those claims. California does not recognize an independent cause of action for unjust enrichment at all. *See* Section III(E), *infra*; *Hill v. Roll Int'l. Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011).

(noting the three-year limitations period under New York's consumer protection law, General Business Law § 349); *Wingspan Records, Inc. v. Simone*, 12 Civ. 2172, 2014 U.S. Dist. LEXIS 69718, at *28 (S.D.N.Y. May 15, 2014) (noting that, in New York, unjust enrichment claims seeking monetary relief are subject to a 3-year limitations period); Cal Bus. & Prof. Code §§ 16750.1 & 17208 (providing that actions under the California Cartwright Act and Unfair Competition Law must be commenced within four years of accrual).

In "reverse payment" cases, a plaintiff's claims accrue when the challenged agreement allegedly begins to prevent generic competition. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 300 (D. Mass. 2014) (noting that plaintiffs had "demonstrated that their cause of action accrued in August 2008, on the theory that Ranbaxy would have come to market in August 2008 but for its settlement agreement"); *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 261 F. Supp. 2d 188, 219 (E.D.N.Y. 2003) (noting that plaintiffs' "reverse payment" claim accrued at the time of settlement in 1997, where plaintiffs' surviving theory of injury was that "in the absence of the challenged agreements" the parties would have entered a license agreement allowing generic entry); *In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363, 378, 380 (S.D.N.Y. 2002) (holding that plaintiffs' claims challenging an alleged "reverse payment" settlement executed in 1994 "accrued in March 1995, at

the latest" when the generic defendant "failed to introduce generic buspirone in the marketplace").[6]

Here, Plaintiffs allege that the GSK-Teva settlement impermissibly delayed generic competition. Specifically, they allege that but for the settlement agreement, Teva would have launched its generic tablets (either at risk or after winning the patent litigation) when the FDA approved Teva's ANDA on August 30, 2006. (Compl. ¶ 71.) Accordingly, Plaintiffs plead that injury occurred and their claims accrued no later than August 30, 2006. Because Plaintiffs did not sue in 2010, but rather waited an additional two years until 2012, the Michigan, New York, and California statutes of limitations bar their claims.[7]

---

[6] Michigan, New York, and California law agree with the federal "injury accrual" rule. *See Nelson v. Ho*, 564 N.W.2d 482, 487 (Mich. Ct. App. 1997) (citing Mich. Comp. Laws § 600.5827) (Michigan laws); *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001) (New York General Business Law § 349); *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 32-33 (N.Y. App. Div. 2009) (New York Donnelly Act); *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 879 (Cal. 2013) (California laws).

[7] Plaintiffs may not rely on any discovery rule to alter the accrual date for their claims. It is well-established in both Michigan and New York that no discovery rule applies to antitrust and consumer protection claims. *Trentadue v. Gorton*, 738 N.W.2d 664, 672 (Mich. 2007); *Wender v. Gilberg*, 716 N.Y.S.2d 40, 41 (N.Y. App. Div. 2000). Likewise, as a California district court recently explained, California's "delayed discovery" doctrine does not apply to Cartwright Act claims (like Plaintiffs' Count Eight) and California Unfair Competition law claims (like Plaintiffs' Count Nine) based on alleged anticompetitive conduct. *Ryan v. Microsoft Corp.*, No. 14-CV-04634, 2015 U.S. Dist. LEXIS 47753, at *52-53 (N.D. Cal. Apr. 10, 2015). Further, even where the discovery rule applies, it cannot salvage a claim if plaintiffs "knew or should have known" of their claims at

### 1.   The Fraudulent Concealment Doctrine Cannot Save Plaintiffs' Claims.

To avoid the inevitable time bar, Plaintiffs contend that Defendants' fraudulent concealment tolled their claims until the Direct Purchaser Plaintiffs' complaint put them on notice.  (Compl. ¶ 121.)  It is well-settled that state-law rules, like those regarding accrual, fraudulent concealment, continuing violations, and the like, apply to Plaintiffs' state-law claims.[8]  Here, Michigan, New York, and

---

the time they were injured.  *See M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 136 Cal. Rptr. 3d 788, 807 (Cal. Ct. App. 2012); *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 660 (E.D. Pa. 2013) (analyzing California law).  Plaintiffs cannot rely on the delayed discovery doctrine where, as here, they acknowledge public disclosures exposing the factual basis of their complaint, but do not explain how they failed discover their claims earlier.  *McKelvey v. Boeing N. Am., Inc.*, 86 Cal. Rptr. 2d 645, 652 (Cal. Ct. App. 1999), *superseded, on other grounds, by statute at* Cal. Code Civ. P. § 340.8(c)(2).

[8] The United States Supreme Court repeatedly has held that state-law rules that form "an integral part of the several policies served by the [state's] statute of limitations . . . must be considered part and parcel of the statute of limitations." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751-52 (1980) (holding that a federal court must apply a state tolling rule); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949) ("Since [the] cause of action is created by local law, the measure of it is to be found only in local law . . . [i]t accrues and comes to an end when local law so declares."); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945) (holding that "[t]he fact that under New York law a statute of limitations might be lengthened or shortened" [is a] matter[] of local law properly to be respected by federal courts"); *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 206-07 (1st Cir. 2015) (refusing to apply the federal continuing violations doctrine to a state-law claim where Puerto Rico would be unlikely to apply it, and stating that "is long since settled that state law governs when a state-created cause of action accrues") (citations and internal quotations omitted); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (instructing the district court, on remand, to apply a recent California Supreme Court case—not

California all require plaintiffs invoking the fraudulent concealment doctrine to plead that defendants ***affirmatively acted*** to prevent discovery of the cause of action; mere silence is not enough.  *See Meyer and Anna Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 909 (Mich. Ct. App. 2005) (citing *Draws v. Levin*, 52 N.W.2d 180 (Mich. 1952)); *Putter v. N. Shore Univ. Hosp.*, 858 N.E.2d 1140, 1142 (N.Y. 2006); *Robare v. Fortune Brands, Inc.*, 833 N.Y.S.2d 753, 755-56 (N.Y. App. Div. 2007);  *Long v. Walt Disney Co.*, 10 Cal. Rptr. 3d 836, 841-42 (Cal. Ct. App. 2004).  Indeed, New York's highest court summarized the law of all three states when it remarked that a defendant "is not legally obligated to make a public confession, or to alert people who may have claims against it, to get the benefit of the statute of limitations."  *Zumpano v. Quinn*, 849 N.E.2d 926, 930 (N.Y. 2006).

---

federal law—to determine if the continuing violations doctrine applied to plaintiffs' Cartwright Act claim);  *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 660 (E.D. Pa. 2013) (applying state-law rules to equitable tolling doctrines).

Some district courts incorrectly have applied federal law when evaluating the equitable tolling doctrines applicable to state-law claims.  *See In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 402-03 (D. Mass. 2013); *United States v. Dentsply Int'l, Inc.*, No. 99-005, 2001 U.S. Dist. LEXIS 9057, at *52-57 (D. Del. Mar. 30, 2001); *Driscoll v. New York*, 650 F. Supp. 1522, 1527-28, 1534 (S.D.N.Y. 1987).  These cases should be disregarded as inconsistent with Supreme Court precedent, which—since 1945—unequivocally has held that state-law equitable tolling doctrines apply to state-law claims.

Moreover, even where a plaintiff has pleaded affirmative concealment adequately, the plaintiff may not take advantage of the fraudulent concealment doctrine unless it exercised reasonable diligence in uncovering its claims. *See Meyer and Anna Prentis Family Found*, 698 N.W.2d at 907 n.2 (holding that a plaintiff alleging fraudulent concealment under Michigan law must exercise reasonable diligence); *Jack Kent Cooke, Inc. v. Saatchi & Saatchi N. Am.*, 635 N.Y.S.2d 611, 612-13 (N.Y. App. Div. 1995) (holding that the limitations period was not tolled because "the means of obtaining the truth [were] available by the exercise of ordinary intelligence"); *Mark K. v. Roman Catholic Archbishop of Los Angeles.*, 79 Cal. Rptr. 2d 73, 78 (Cal. App. 1998) (holding that "the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it").

Here, Plaintiffs contend that GSK and Teva fraudulently concealed "the anti-competitive nature of the Agreements challenged in this action, and other material facts (including, but not limited to, the Patent Litigation court's ruling that the first claim of [the] '017 patent was unenforceable and not infringed by Teva's ANDA)." (Compl. ¶¶ 109, 114; *see also id.* ¶¶ 99-123.) As in most "reverse payment" cases, however, Plaintiffs could have discovered their claims through the

exercise of reasonable diligence because Defendants' dispute over the validity of the '017 patent—and the subsequent settlement of those claims—were well-publicized facts, and it was obvious to any purchaser of lamotrigine that Teva did not begin selling lamotrigine tablets immediately. *See In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 380 (S.D.N.Y. 2002). Likewise, Plaintiffs acknowledge that GSK and Teva affirmatively disclosed that Teva was not permitted to sell lamotrigine tablets until 2008—three years after the settlement. *See* News Release, attached as Eakeley Decl. Ex. B (noting that Teva expected to launch lamotrigine tablets in 2008); Compl. ¶¶ 114 & 116 (GSK Form 20-Fs containing similar language); *id*. ¶¶ 109 & 112 (Teva Form 20-Fs noting that Teva expected to launch lamotrigine tablets "in 2008 prior to patent expiry in July 2008"); *id*. ¶ 113 (Teva press release explaining that GSK granted Teva a license to sell lamotrigine tablets "during the six month pediatric exclusivity period which ends January 22, 2009").

Plaintiffs' contention that Defendants fraudulently concealed "the Patent Litigation court's ruling that the first claim of [the] '017 patent was unenforceable and not infringed by Teva's ANDA" fares no better. (Compl. ¶¶ 109, 114.) Plaintiffs plead that on April 4, 2005, "the Patent Litigation court . . . entered an order withdrawing the bench ruling that invalidated the first claim of the '017 patent." *Id*. at ¶ 87. In fact, Judge Bissell's bench ruling **and** his order

withdrawing it are matters of public record, which Plaintiffs admit their counsel reviewed. *See SmithKline Beecham v. Teva Pharms.*, No. 02-3779, Dkt. No. 86 (January 27, 2005 minute entry noting that "Court declared Claim One of the Patent at issue is invalid. Decision Reserved as to other claims"); *Id.* at Dkt. No. 88 (order withdrawing oral bench ruling of January 27, 2005); Compl. ¶ 1. Moreover, the '017 patent is a public document, and Plaintiffs could have determined its validity for themselves through reasonable diligence. *See In re Buspirone Patent Litig.*, 185 F. Supp. 2d at 380.

Also, as the well-pleaded facts confirm, this case is like "the vast majority of [so-called] pay-for-delay suits," because, "not only were the material terms of the settlement not concealed, [but] defendants affirmatively disclosed these terms to the public, including in press releases and in SEC filings," as well as in a complaint that Teva filed in a breach of contract suit between Defendants.[9] *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 748 (E.D. Pa. 2014) (internal quotation marks omitted); *see also In re Ciprofloxacin Hydrochloride Antitrust*

---

[9] Indeed, Plaintiffs' theories are not new. Plaintiffs' counsel in this case brought at least five "reverse payment" cases before this one, including one (*In re Effexor XR Antitrust Litigation*) in which the alleged payment included an exclusive license. *See In re Lipitor Antitrust Litig.*, No 3:12-cv-02389 (D.N.J.); *In re Effexor XR Antitrust Litig.*, No. 3:11-cv-05590 (D.N.J.); *In re K-Dur Antitrust Litig.*, No. 01-cv-01652 (D.N.J.); *Joblove v. Barr Labs. (In re Tamoxifen Antitrust Litig.)*, No. 1:00-cv-06046 (E.D.N.Y.); *In re Ciprofloxin Hydrochloride Antitrust Litig.*, 1:00-md-01383 (E.D.N.Y.).

*Litigation*, 261 F. Supp. 2d 188, 223 (E.D.N.Y. 2003) (holding an alleged "reverse payment" agreement was not fraudulently concealed because "the fact of the settlement and its principle terms were contained in press reports" and SEC filings). Plaintiffs allege that the settlement contained two "reverse payments" that delayed Teva's entry: (1) revenues resulting from Teva's sale of lamotrigine chewables beginning only a few months after the settlement, more than three years before the '017 patent expired, and (2) exclusive licenses to sell generic lamotrigine tablets and chewables, which precluded GSK from launching an authorized generic during the license terms. (Compl. ¶¶ 12, 81, 83, 96).[10] The Complaint itself alleges, however, that GSK and Teva publicly disclosed *at least six times* that the agreement allowed Teva to sell lamotrigine chewables beginning no later than June 2005. *See* News Release, Attached as Eakeley Decl. Ex. B (Teva's February 17, 2005 press release); Compl. ¶¶ 109 & 112 (Teva's Form 20-

---

[10] Plaintiffs also allege that the License and Supply Agreement delayed the entry of other generics. (*See, e.g.*, Compl. ¶¶ 79, 81, 83, 91.) But they have not alleged that GSK and Teva made any agreement that Teva would not relinquish 180-day exclusivity, nor that the parties would do anything to alter the normal operation of the Hatch-Waxman Act. Therefore, to the extent that the settlement had any effects on other generics, those effects are a product of Hatch-Waxman, not the settlement.

Fs for the years 2005, 2007, and 2008); *id*. ¶¶ 114, 116 (GSK's Form 20-Fs for 2005 and 2006).[11]

GSK and Teva also affirmatively disclosed the second alleged reverse payment, the so-called "agreement by [GSK] not to sell a 'branded-generic' version of Lamictal [t]ablets or [c]hewables." (Compl. ¶ 12.)  Teva's February 17, 2005 press release, cited in the Complaint, disclosed that the agreement granted Teva ***exclusive*** licenses for both products.  *See* News Release, Attached as Eakley Decl. Ex. B.  Teva's Form 20-Fs for the years 2005, 2007, and 2008; GSK's Form 20-Fs for 2005 and 2006; and Teva's July 22, 2008 press release likewise explained that Teva had been granted ***exclusive*** licenses.  (Compl. ¶¶ 109, 112, 113, 114, 116.)  By repeatedly characterizing the licenses as "exclusive," these public disclosures, each of which Plaintiffs allege in their own Complaint, put Plaintiffs on notice that the licenses barred GSK from selling an authorized generic.[12]  Further, Teva's public breach-of-contract complaint broadcast Teva's

---

[11] Moreover, the Complaint alleges that Teva actually began selling Lamictal chewables on May 25, 2005.  (Compl. ¶ 76.)  Plaintiffs, therefore, cannot seriously contend that, through 2008, GSK and Teva fraudulently concealed that the agreement allowed Teva to earn money by selling lamotrigine chewables beginning in 2005.

[12] By definition, under an exclusive license, the licensee is the *only one* authorized to practice the licensor's invention. *See, e.g.*, Black's Law Dictionary 938 (8th ed. 2004) (defining an exclusive license as a "license that gives the licensee the sole right to perform the licensed act . . . and that prohibits the licensor from performing the licensed act and from granting the right to anyone else; esp.

interpretation of the exclusivity term of the License and Supply Agreement, *i.e.* that "while GSK reserved the right to sell its Lamictal® tablets as branded products, GSK gave up the right for itself and anyone other than Teva to sell Lamictal® tablets or any other products as generic equivalents . . . for the limited duration of the[] license provisions." *Teva Pharm. Indus. Ltd. v. SmithKline Beecham Corp.*, No. 08-cv-3706 (DMC), Dkt. No. 1 at ¶ 22 (Jul. 23, 2008); *accord id.* at ¶ 2.

Because Plaintiffs have not alleged that Defendants affirmatively acted to prevent discovery of their claims, the fraudulent concealment doctrine is inapposite. *Meyer and Anna Prentis Family Found*, 698 N.W.2d at 909 (Michigan law); *Putter*, 858 N.E.2d at 1142; *Robare*, 833 N.Y.S.2d at 755-56 (New York law); *Long*, 10 Cal. Rptr. 3d at 841-42 (California law). Indeed, Plaintiffs' own Complaint renders its allegations of fraudulent concealment fatally implausible because it concedes that GSK and Teva ***affirmatively disclosed*** the material facts underlying Plaintiffs' allegations. Further, by exercising reasonable diligence,

---

such a license of a copyright, patent, or trademark right"); *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("[A] grant of an exclusive right to make, use and vend two patented machines within a certain district . . . excludes all other persons, even the patentee, from making, using or vending like machines within the district."); *Sanofi, S.A. v. Med-Tech Veterinarian Prods., Inc.*, 565 F. Supp. 931, 937 (D.N.J. 1983) (Sarokin, J.) (observing that "[t]he patentee has no more right to practice his patent in a field of use where an exclusive license has been given, than does a stranger" and holding that the Plaintiff held an exclusive license because of the presence of the word "exclusive" in the contract).

Plaintiffs could have discovered the material details of their claims. *See Meyer and Anna Prentis Family Found*, 698 N.W.2d at 907 n.2 (Michigan law); *Jack Kent Cooke*, 635 N.Y.S.2d at 612-13 (New York law); *Mark K.*, 79 Cal. Rptr. 2d at 78 (California law).

### 2. Applicable State Law Does Not Recognize Injury by Continuing Violation Under These Circumstances.

Nor can Plaintiffs invoke the continuing violation or continuous accrual doctrines to save their untimely claims. (*See* Compl. ¶ 124 (alleging that Plaintiffs "were harmed and suffered separate injuries and claims against Defendants each and every time Plaintiff and each member of the Classes purchased Lamictal Tablets . . . during the Class Period").) No such doctrine exists in Michigan. *Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 769 N.W.2d 234, 247-49 (Mich. Ct. App. 2009). New York's "continuing violation" and California's "continuous accrual" doctrines—even if they applied to claims sounding in antitrust at all—toll the statute only where the defendant commits a series of discrete unlawful acts, each of which is independently actionable. *Selkirk v. New York,* 671 N.Y.S.2d 824, 825 (N.Y. App. Div. 1998); *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 880 (Cal. 2013). And California's "continuing violation" doctrine applies only where "there is no *single incident* [like a contract] that can fairly or realistically be identified as the cause of significant harm," such as in a hostile work environment claim. *DC*

*Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 949 (C.D. Cal. 2013) (quoting

*Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)).

Plaintiffs have alleged only one discrete act, with supposedly

continuing effects—the 2005 settlement agreement.   (*See* Compl. ¶ 8 ("The

[settlement, license and supply] Agreements . . . were anticompetitive, unfair,

deceptive, and inequitable.); *id.* ¶ 12.)   Accordingly, they are unable to avail

themselves of the continuing violation doctrine.

### a.   Michigan

Michigan has outright rejected the continuing violation doctrine.  *See*

*Garg v. Macomb County Comm. Mental Health Svs.*, 696 N.W.2d 646, 658-59

(Mich. 2005) (abrogating the continuing violation doctrine as inconsistent with

Mich. Comp. Laws § 600.5827); *Marilyn Froling Revocable Living Trust v.*

*Bloomfield Hills Country Club*, 769 N.W.2d at 247-49 (holding that *Garg* applies

"beyond the context of civil rights claims" and completely abrogated "the

continuing wrongs doctrine in the jurisprudence of this state").   In Michigan, "[f]or

the purposes of accrual, there need only be one wrong and one injury," and "the

accrual of the claim occurs when both the act and the injury first occur."   *Id.* at

250-51.   Here, Plaintiffs allege that Defendants engaged in a single wrongful act—

the 2005 settlement agreement—and Plaintiffs' alleged injury occurred no later

than August 30, 2006.   Accordingly, Plaintiffs' Michigan claims are time-barred.

**b.    New York**

New York's limited continuing violation doctrine cannot save Plaintiffs' New York claims from dismissal on statute of limitations grounds. As far as counsel is aware, no New York court has ever applied the continuing violation doctrine (sometimes called the continuing tort or continuing wrong doctrine) to preserve a Donnelly Act claim beyond its four-year limitation period.[13] Additionally, the continuing violation doctrine does not apply in New York where, as here, Plaintiffs' alleged injuries flow from a single contract. *Thomas v. City of Oneonta*, 934 N.Y.S.2d 249, 251 (N.Y. App. Div. 2011) (holding that the doctrine must be "predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct" (quoting *Selkirk v. New York*, 671 N.Y.S.2d 824)); *see also Bullard v. New York*, 763 N.Y.S.2d 371, 373-74 (N.Y. App. Div. 2003). In *Bullard*, the New York Appellate Division held that the continuing violation doctrine could not save plaintiffs' untimely Donnelly Act and General Business

---

[13] Only two federal courts—both outside of New York—even arguably did so. The first applied it in dicta (as it had already dismissed the plaintiffs' Donnelly Act claim for lack of standing) in an unpublished opinion. *See United States v. Dentsply Int'l, Inc.*, No. 99-005, 2001 U.S. Dist. LEXIS 9057, at *52-57 (D. Del. Mar. 30, 2001). And in both cases, the courts did not purport to apply New York state law, but rather applied their interpretations of the federal continuing violation doctrine across more than a dozen state laws without considering the contrary Supreme Court decisions requiring application of state law described in Section III(B)(1), *supra*. *Id.*; *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 402-03 (D. Mass. 2013).

Law § 349 claims that flowed from a  Department of Correctional Services contract for telephone services, which allegedly increased the cost of those services.  *Id*.  The court explained that "[w]hile claimants characterize the damages sustained after every completed telephone call as continuing unlawful acts, we find that they are more appropriately viewed as the continuing effects of the  . . . contract."  *Id*.; *see also Oyster Bay v. J.D. Posillico, Inc.*, 4 N.E.3d 944, 949 (N.Y. 2013) (holding the doctrine inapplicable to plaintiffs' public nuisance claim because "defendants' tortious conduct consisted of discrete acts . . . that ceased . . . over 20 years ago"); *Pike v. N.Y. Life Ins. Co.*, 901 N.Y.S.2d 76, 81 (N.Y. App. Div. 2010) (holding that plaintiffs' claim that they were fraudulently induced to purchase unsuitable insurance policies accrued at the time of purchase, and that the continuing violation doctrine did not apply because no "specific wrong  . . . occurred each time they paid a premium, other than having to pay it"); *Thomas*, 934 N.Y.S.2d at 251 (holding plaintiff's retaliation claims accrued when the retaliation occurred, and the limitations period did not restart every time that the plaintiff performed one of the additional duties assigned).  Just as each telephone call and attendant overcharge did not restart the limitations period in *Bullard*, each Lamictal purchase and alleged attendant overcharge cannot alter the accrual date here.

### c.   California

California's "continuous accrual" or "continuing violation" doctrines do not apply to a claim under the Cartwright Act (Count Eight) or California's Unfair Competition Law (Count Nine), unless the claim is predicated on misrepresentation or fraud.  *See Ryan v. Microsoft Corp.*, No. 14-CV-04634, 2015 U.S. Dist. LEXIS 47753, at *52-53 (N.D. Cal. Apr. 10, 2015) (holding that no equitable exception to the statute of limitations applied to such claims).  And in any event, the doctrines cannot rescue Plaintiffs' untimely claims here.

### (1)   Continuous Accrual

California's "continuous accrual" doctrine operates in the same way as New York's "continuing violation" doctrine.  It applies only if the defendant repeatedly breaches a duty or engages in misconduct, and if "each new breach . . . provides all the elements of a claim—wrongdoing, harm, and causation—[such that] each may be treated as an independently actionable wrong with its own time limit for recovery."  *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 881 (Cal. 2013).  Because each "breach" sufficient to restart the statute of limitations must provide all the elements of a claim, courts refuse to apply it in cases involving a "a single overt act with continuing ill effects."  *NBCUniversal Media, LLC v. Superior Court of Los Angeles*, 171 Cal. Rptr. 3d 1, 13 n.10 (Cal. Ct. App. 2014) (holding that each broadcast of an allegedly misappropriated television show

-24-

constituted "not a new breach, but rather additional harm"); *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412, 423 (Cal. Ct. App. 2004) (holding the doctrine does not apply to "a single breach or other wrong which has continuing impact"); *Hameed v. IHOP Franchising LLC*, 520 F. App'x 520, 522 (9th Cir. 2013) (finding claim barred where "the alleged unfairness stems not from a course of conduct, but from the terms of the initial contract"); *Boyd v. Freeman*, No. B253500, 2015 Cal. App. Unpub. LEXIS 3449, at *29-35 (Cal. Ct. App. May 19, 2015) (finding the date of the last interest payment insufficient to save a time-barred usurious loan claim where the lender engaged in no misconduct during the limitations period).[14]

Here, Plaintiffs allege just that: "a single overt act with continuing ill effects."  Indeed, Plaintiffs' claim is that a single contract—the 2005 settlement agreement—caused all their woes.  Such a theory provides no basis for continuous accrual.

---

[14] By contrast, the continuous accrual doctrine tolled the statute of limitations in *Aryeh*, where Canon ran thousands of test copies on photocopy machines it leased to the plaintiff over the course of 17 service visits between February 2002 and November 2004. *Aryeh*, 292 P.3d at 874.  Canon then charged the plaintiff extra monthly charges, claiming each month that the plaintiff had exceeded his monthly allowance of copies. *Id.* at 874, 881.  Each month, Canon engaged in discrete acts of wrongdoing, and each set of discrete acts harmed the plaintiff anew.

(2)    **Continuing Violation**

Plaintiffs fare no better under California's "continuing violation" doctrine.   The California Supreme Court has explained that the continuing violation doctrine applies where an injury is "the product of a series of small harms, any one of which may not be actionable on its own," because those injured in such a fashion "should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action." *Aryeh*, 292 P.3d at 879.[15] Two principles substantially limit the doctrine's application, both of which logically flow from its contours.   First, the doctrine applies only when "there is no *single incident*"—like the settlement agreement here—"that can fairly or realistically be identified as the cause of significant harm."   *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 949 (C.D. Cal. 2013) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)); *see also NBCUniversal*, 171 Cal. Rptr. 3d at 13 n.10 (refusing to apply the continuing violations doctrine where "the last act necessary for a discrete cause of action" was outside the limitations period); *Marino v. Countrywide Fin. Corp.*, No. 14-56206,

---

[15] The doctrine can apply, for example, to hostile environment claims where no single act of harassment is actionable on its own, and plaintiffs' claim is based on the cumulative effect of individual acts.   *Id.* (citing *Nat'l R.R. Passenger Crop. v. Morgan*, 536 U.S. 101, 118 (2002) as an example of such a fact pattern); *Allen v. Similasan Corp.*, No. 12-cv-0376, 2013 U.S. Dist. LEXIS 139874, at *14-15 (S.D. Cal. Sept. 27, 2013) ("[M]ost cases invoking the continuing violations doctrine in California involve alleged employment discrimination . . . .").

602 F. App'x 403, 405 (9th Cir. May 18, 2015) (rejecting the continuing violation

doctrine where plaintiff's injury "occurred at a precise moment . . . when his loan

was originated").  Second, because "[t]he continuing violation doctrine is premised

on the equitable notion that the statute of limitations should not begin to run until a

reasonable person would be aware that his or her rights have been violated," it does

not apply if Plaintiffs knew or should have known of their claim through the

exercise of reasonable diligence.  *Allen*, 2013 U.S. Dist. LEXIS 139874, at *14-15

(quoting *Morgan v. Regents of Univ. of Cal.*, 105 Cal. Rptr. 2d 652 (2000)).

Plaintiffs here cannot take advantage of the continuing violation

doctrine because they allege a discrete wrong: the settlement agreement.  Further,

as explained above in Section III(B)(1), *supra*, Defendants' repeated public

disclosures put Plaintiffs on notice of their claims, and Plaintiffs surely would have

known of their claims had they exercised reasonable diligence.  Accordingly, no

equitable exception recognized in any relevant state can save Plaintiffs' state-law

claims.  They should therefore be dismissed because they are barred by the

applicable statutes of limitations.

### C. Plaintiffs' New York Consumer Protection Claim Also Fails Because Plaintiffs Have Not Alleged Any Deceptive, Consumer-Oriented Acts that Occurred in New York.

Even if Plaintiffs had filed timely, their claim under New York's

consumer protection statute, N.Y. Gen. Bus. Law § 349, (Count Five) fails because

they have not alleged that the Defendants engaged in any deceptive, consumer-oriented acts, nor have they alleged that any deceptive conduct occurred in New York.  New York's consumer protection law applies narrowly to "***deceptive*** acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  *See* N.Y. Gen. Bus. Law § 349(a) (emphasis added).  To limit "a tidal wave of litigation against businesses that was not intended by the Legislature," the New York Court of Appeals has limited the statute to those "material" deceptive acts or practices that are "likely to mislead a reasonable consumer."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *see also City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009).  "[T]he kinds of trade practices which have been considered as deceptive in the past include false advertising, pyramid schemes, deceptive preticketing, misrepresentation of the origin, nature or quality of the product, false testimonial, deceptive collection efforts against debtors, deceptive practices of insurance companies, and bait and switch operations."  *Richstone v. Everbank Reverse Mortgage LLC*, 910 N.Y.S.2d 408, 2009 N.Y. Misc. LEXIS 3651, at *10 (N.Y. Sup. Ct. 2009).

Courts routinely dismiss actions where, as here, there is no such deceptive conduct alleged, and they routinely decline to convert § 349 into a catch-

all for anticompetitive conduct.[16]   *See Cunningham v. Bayer AG*, No. 603820/00, 2003 N.Y. Misc. LEXIS 2011, at \*13-32 (N.Y. Sup. Ct. Oct. 15, 2003) (holding that a "reverse payment" settlement agreement was not deceptive and noting that the court saw "no compelling reason to employ a strained interpretation to extend the scope of [§ 349's language] to include all conduct that violates the antitrust laws"); *see also New York v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8, 12 (N.Y. App. Div. 2007) (alleged price-fixing conspiracy not deceptive); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666-67 (E.D. Mich. 2011) (alleged conspiracy to allocate markets not deceptive); *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554-55 (E.D. Pa. 2007) (alleged price-fixing conspiracy not deceptive).   Indeed, allowing Plaintiffs' claim to proceed would undermine the New York Legislature's intent in expressly declining to adopt the

---

[16] Here, the only conceivably deceptive conduct that Plaintiffs allege is that GSK and Teva fraudulently concealed the terms of their agreement.   To the contrary, as explained above, the Complaint makes clear that GSK and Teva affirmatively disclosed the basis for Plaintiffs' claims.   *See* Section III(B)(1), *supra*.   Further, a plaintiff pursuing a claim under § 349 must plead that it "suffered injury as a result of the allegedly deceptive act or practice," *see Smokes-Spirits.com, Inc.*, 911 N.E.2d at 838-39, and Plaintiffs here do not plead that the alleged fraudulent concealment caused them to pay higher prices for lamotrigine. *See In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 908-09 (E.D. Pa. 2012) (rejecting plaintiffs' theory that they had adequately pled deceptive conduct by alleging that defendants hid a price-fixing conspiracy from plaintiffs where plaintiffs had not plausibly suggested "that the purported pretextual explanations for the rising egg prices are the actual cause of the [p]laintiffs' alleged harm of paying artificially-inflated prices for eggs").

federal prohibition on "unfair methods of competition," and instead prohibiting only "deceptive acts or practices."  *Cunningham*, 2003 N.Y. Misc. LEXIS 2011, at *16-19; *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 666-67; *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d at 554-55.  As the *In re Packaged Ice Antitrust Litigation* court noted, "[t]his omission is significant.  A number of courts and commentators have observed that the absence of the reference to unfair competition or unfair practices in § 349 'indicates that anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute.'"  779 F. Supp. 2d at 666-67.

Plaintiffs' § 349 claim also fails because they do not allege any consumer-oriented conduct aimed at the indirect purchasers in the putative class. "Generally, claims under [§ 349] are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods though false or misleading advertising."  *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d at 552 (quoting *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892 (N.Y. 1999)).  Section 349 does not apply, however, where the conduct at issue is not "directed at consumers."  *Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496, 498 (N.Y. App. Div. 2006).  Thus, New York courts have "consistently held" that where, as here, "the alleged deceptive act occurs in a transaction between two companies, even when the result of the deception impacts on a consumer, it is not

-30-

actionable under § 349." *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F.

Supp. 2d at 552 (alleged price-fixing agreement not consumer-oriented); *see also*

*Daicel Chem. Corp.*, 840 N.Y.S.2d at 12 (same); *Williams v. Barclays Capital,*

*Inc.*, No. 653785/2012, 2015 N.Y. Misc. LEXIS 991, at *24 (N.Y. Sup. Ct. Mar.

31, 2015) (alleged group boycott not consumer-oriented); *Sheet Metal Workers*

*Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380,

418 (E.D. Pa. 2010) (filing sham patent litigation to delay generic competition not

consumer-oriented); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 613-14

(S.D.N.Y. 2005) (deception of a pharmacy benefit manager regarding the safety

and efficacy of Rezulin not consumer-oriented).

Finally, Plaintiffs' New York consumer protection claim must be

dismissed because they fail to plead that any allegedly deceptive conduct occurred

in New York. *See Sheet Metal Workers Local 441 Health & Welfare Plan*, 263

F.R.D. 205, 214 (E.D. Pa. 2009) (holding that "the deceptive conduct giving rise to

the section 349 claim must have occurred in New York state") (citing *Goshen v.*

*Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002)).

### D.   Plaintiffs' Michigan Claims Also Fail Because Plaintiffs Fail to Plead Any Connection to Michigan at All.

Plaintiffs' claims under the Michigan Antitrust Reform Act, Mich.

Comp. Laws §§ 445.772, 445.773, (Counts Six and Seven) must be dismissed

because (1) no named Plaintiff has a cause of action under Michigan law, and (2)

no named Plaintiff has Article III standing to bring it.[17]   None of the named Plaintiffs is alleged to reside in Michigan.  (Compl. ¶¶ 18-20 (alleging McAnaney is a citizen of New York, Local 38 is located in Ohio, and Local 595 is administered from California).)  Nor does the Complaint allege that McAnaney or any health fund member purchased lamotrigine in Michigan.

Because none of the named Plaintiffs is alleged to have suffered an injury that has anything to do with Michigan, they can have no cause of action under Michigan law.  More than a century ago, in *N.Y. Life Insurance Company Co. v. Head*, the United States Supreme Court established that a state statute could not extend beyond that state's borders "without throwing down the constitutional barriers by which all the States are restricted."  234 U.S. 149, 161 (1914).  The Court noted that "[t]his is so obviously the necessary result of the Constitution that it has rarely been called into question."  *Id.*  The Supreme Court has repeatedly reaffirmed this obvious and fundamental principle.  *See, e.g.*, *BMW of N. Am. v. Gore*, 517 U.S. 559, 571 & n.16 (1996) (reaffirming that "[n]o state can legislate except with reference to its own jurisdiction"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 815, 821-22 (1985) (holding that the Constitution prohibits applying

---

[17] To the extent Plaintiffs attempt to plead an unjust enrichment claim under Michigan law (Count Ten), it fails for the same reasons.

Kansas law to the claims of class action plaintiffs "with no apparent connection to the State of Kansas except for [the] lawsuit").

Even more fundamentally, Plaintiffs lack standing to sue under Michigan law.  To plead a "case or controversy" necessary to establish standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358-59 (3d Cir. 2015).  A plaintiff does not suffer an injury sufficient to establish standing to sue under the law of a state in which it does not claim to have suffered any injury at all.  *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) ("[P]laintiffs have  no injuries, and therefore no standing, in connection to the majority of states referenced in the amended complaint.").[18]

---

[18]   That *absent* class members might have allegedly suffered injuries connected to Michigan cannot save Plaintiffs' claims, nor should the Court's inquiry be deferred until the class certification stage.  In *Zimmerman v. HBO Affiliate Group*, the Third Circuit found no error in dismissing the named plaintiff's claim before class certification where plaintiff had no cause of action, even though he argued that other members might.  834 F.2d 1163, 1169 (3d Cir. 1987); *see also Sheet Metal Workers Local 441 Health & Welfare Plan*, 263 F.R.D. 205, 210-11 (E.D. Pa. 2009) (following *Zimmerman*); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 414 (E.D. Pa. 2009) (same).  Likewise, as the Third Circuit squarely held this past summer, "at all times during the course of a class action, there must be a live 'case or controversy' for Article III purposes . . . [C]lass representatives must meet Article III standing requirements the moment a complaint is filed."  *Neale*, 794 F.3d at 367; *see also In re Niaspan Antitrust Litig.*,

For these reasons, courts in this circuit and in others have—again and again—dismissed claims where plaintiffs lack an adequate connection to the state whose laws they invoke.   *See, e.g.*, *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 251 (D. Conn. 2015); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758; *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 157; *Sheet Metal Workers*, 263 F.R.D. at 213; *United Food and Commercial Workers*, 74 F. Supp. 3d at 1081-82; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 657-59; *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 611-12 & n. 85 (S.D.N.Y. 2005).   Because Plaintiffs have pleaded no connection with Michigan whatsoever, their Michigan claims must be dismissed.

## E.   Plaintiffs' Unjust Enrichment Claim Must be Dismissed Because There is No Federal Common Law of Unjust Enrichment.

Plaintiffs claim in Count Ten that Defendants violated "the laws of unjust enrichment across all the states and territories of the United States" (Compl. ¶ 194), but no federal common law of unjust enrichment exists.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *In re Wellbutrin XL Antitrust Litig.*, 260

---

42 F. Supp. 3d 735, 758 n.20 (E.D. Pa. 2014); *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. at 151-55; *Sheet Metal Workers*, 263 F.R.D. at 210-211; *United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund*, 74 F. Supp. 3d 1052, 1079 (N.D. Cal. 2014) (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004));  *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ;  *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 U.S. Dist. LEXIS 142466, at *37-38 (D.N.J. Oct. 2, 2013) (Thompson, J.).

F.R.D. 143, 167 (E.D. Pa. 2009) ("Unjust enrichment is not a catch-all claim existing within the narrow scope of federal common law."). Courts therefore routinely dismiss undifferentiated unjust enrichment claims like those asserted by Plaintiffs. *See, e.g., id.*; *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667-68 (E.D. Mich. 2011); *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, 2013 U.S. Dist. LEXIS 142466, at *24-27.

Plaintiffs cannot save their claim by arguing that "the elements of unjust enrichment claims are substantially identical across all fifty states." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 167. To the contrary, variation—not uniformity—is the rule.[19] *See id.*; *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d at

---

[19] For example, some states, including California, do not recognize an independent cause of action for unjust enrichment at all. *See, e.g., Hill v. Roll Int'l. Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003) ("[T]here is no cause of action in California for unjust enrichment."). In others, like New York, an unjust enrichment claim cannot stand where the relationship between the plaintiff and defendant is attenuated. *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 216 (E.D. Pa. 2009) (holding that consumers and welfare benefit plans had an insufficient relationship with GSK to sustain a claim under New York law because they purchased pharmaceuticals indirectly); *Reading Int'l Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003) (holding that the plaintiff must share a contractual or quasi-contractual relationship with the defendant to state a claim for unjust enrichment); *Carmona v. Spanish Broad. Sys., Inc.* No. 08 Civ. 4475, 2009 U.S. Dist. LEXIS 26479, at *18 (S.D.N.Y. Mar. 30, 2009) (holding that the parties "must have had some type of direct dealings or an actual, substantive relationship"). And

419 (noting that "states analyze unjust enrichment claims differently"); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 912 (E.D. Pa. 2012) (noting that "the *prima facie* elements for various state unjust enrichment claims are not entirely birds of a feather . . . it is well-accepted that the elements necessary to allege unjust enrichment vary state by state") (internal quotation marks omitted).

Finally, Plaintiffs' nationwide claim must be dismissed because, as discussed in Section III(D), *supra*, Plaintiffs lack standing to pursue claims under the laws of states in which they do not claim to have been injured. *See United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1088 (N.D. Cal. 2014). Allowing Plaintiffs' untethered unjust enrichment claim to stand would "allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in  . . . every state in the Union." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 n.20 (E.D. Pa. 2014) (quoting *In re*

---

Michigan requires that the Plaintiff allege a relationship with the Defendant leading to a direct benefit. *A&M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 Mich. App. LEXIS 433, at *6-7 (Mich. Ct. App. Feb. 28,  2008) (concluding that the unjust enrichment doctrine requires direct receipt of a benefit, and was therefore inapplicable to indirect purchasers).  Thus, even if Plaintiffs had pled unjust enrichment claims under the laws of California, New York, or Michigan, those claims would fail as a matter of law.

*Magnesium Oxide Antitrust Litig.*, No. 10-cv-5943, 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011) (Debevoise, J.)).  That is not the law.

**F.    Plaintiffs' Sherman Act Claims Brought Under the Declaratory Judgment Act Fail Because There Is No "Case or Controversy."**

Finally, Plaintiffs' claims for Declaratory Judgment (Counts One, Two, and Three) under the Sherman Act must be dismissed.  The Declaratory Judgment Act provides that a court "***[i]n a case of actual controversy*** . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C. § 2201(a) (emphasis added).  The Declaratory Judgment Act is procedural only; it does not serve as an independent basis for federal jurisdiction.  *Corzine v. 2005 Def. Base Closure & Realignment Comm'n*, 388 F. Supp. 2d 446, 449 (D.N.J. 2005) (Cooper, J.) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).   Thus, Article III of the Constitution limits the power of the Declaratory Judgment Act to actions presenting a case or controversy that arises by operation of another law or set of laws.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

This case does not present a justiciable controversy involving any violation of the Sherman Act.  In *Illinois Brick*, the Supreme Court concluded that indirect purchasers, like Plaintiffs' here, do not suffer "injury" within the meaning of § 4 of the Clayton Act, 15 U.S.C. § 15, which provides a private right of action

for damages stemming from violations of the Sherman Act.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977); *D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 493 (E.D. Pa. 2006).  And Plaintiffs cannot assert jurisdiction under § 16 of the Clayton Act, 15 U.S.C. § 26, because they do not seek injunctive relief.  Therefore, Plaintiffs lack a case or controversy to support their Declaratory Judgment Act claims, and those claims must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, GSK respectfully requests the Court to dismiss Plaintiffs' Consolidated Amended Complaint under Federal Rules of Civil Procedure 12(c) and 12(h)(2).

December 28, 2015

/s/ Michael E. Patunas
Michael E. Patunas
Mayra V. Tarantino
**PATUNAS TARANTINO LLC**
24 Commerce Street, Suite 606
Newark, NJ 17102
(201) 390-0803

Jay P. Lefkowitz, P.C. (pro hac vice)
Devora W. Allon (pro hac vice)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

Karen N. Walker, P.C. (pro hac vice)
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

*Attorneys for Defendants Teva
Pharmaceuticals USA, Inc., and Teva
Pharmaceutical Industries Ltd.*

/s/ Douglas S. Eakeley
Douglas S. Eakeley
Joseph A. Fischetti
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500

Barbara W. Mather (pro hac vice)
Robin P. Sumner (pro hac vice)
Melissa J. Hatch O'Donnell
**PEPPER HAMILTON LLP**
(A Pennsylvania Limited Liability
Partnership)
3000 Two Logan Square
Eighteenth and Arch Streets,
Philadelphia, PA 19103-2799
609.981.4000

*Attorneys for Defendant
GlaxoSmithKline LLC*