# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: LAMICTAL ANTITRUST LITIGATION | Master File No. 12-995-WHW-CLW |
| This Document Relates to: | |
| LOUISIANA WHOLESALE DRUG CO., INC., on behalf of itself and all others similarly situated, <br> Plaintiff, <br> v. <br> SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS, <br> Defendants. | Case No. 2:12-CV-00995-WHW-CLW |
| KING DRUG COMPANY OF FLORENCE, INC., on behalf of itself and all others similarly situated, <br> Plaintiff, <br> v. <br> SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS, <br> Defendants. | Case No. 2:12-CV-01607-WHW-MCA |
| ROCHESTER DRUG CO-OPERATIVE, INC., on behalf of itself and all others similarly situated <br> Plaintiff, <br> v. <br> SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS <br> Defendants. | Case No. 15-CV-8034-WHW-MCA |
| In re: LAMICTAL INDIRECT PURCHASER AND ANTITRUST CONSUMER LITIGATION | Master File No. 2:12-CV-05120-WHW-CLW |
| This Document Relates to: | |
| CAROLYN MCANANEY, on behalf of herself and all others similarly situated, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 38, HEALTH AND WELFARE FUND, on behalf of itself and all others similarly situated <br> Plaintiffs, | |

|  | Case No. 2:12-CV-05120-WHW-CLW |
| :-- | :-- |
| v. | |
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS | |
| Defendants. | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 595 HEALTH AND WELFARE FUND, on behalf of itself and others similarly situated | Case No. 2:12-CV-06721-WHW-CLW |
| Plaintiff, | |
| v. | |
| GLAXOSMITHKLINE LLC, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS | |
| Defendants. | |

## JOINT RULE 26(f) REPORT

Pursuant to Fed. R. Civ. P. 16(b) and 26(f) and Local Rule 26.1, the parties hereby jointly submit this Rule 26(f) report and their proposals regarding discovery and scheduling.

## I.     NATURE OF CLAIMS AND DEFENSES

The above captioned actions, proceeding under master file numbers 12-995 and 12-5120, were brought by two sets of plaintiffs as putative class actions. The named direct purchaser plaintiffs Louisiana Wholesale Drug Company, Inc. ("LWD"), King Drug Company of Florence, Inc. ("King Drug"), and Rochester Drug Co-Operative, Inc. ("RDC") (collectively the "Direct Purchaser Plaintiffs"), whose consolidated complaint is pending in Case No. 12-995, are pharmaceutical product wholesalers who are direct purchasers of the prescription drugs Lamictal Tablets and/or Lamictal Chewables (the active ingredient of both is lamotrigine). The named indirect purchaser plaintiffs Carolyn McAnaney ("McAnaney"), International Brotherhood of

Electrical Workers Local 38, Health and Welfare Fund ("IBEW Local 38"), and International

Brotherhood of Electrical Workers, Local 595 Health and Welfare Fund ("IBEW Local 595"),

are an individual consumer of and end-payers for Lamictal Tablets or generic lamotrigine tablets

(Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs are referred to collectively herein as

"Plaintiffs"). Plaintiffs, purporting to represent putative classes of purchasers of Lamictal or

lamotrigine, have brought consolidated actions against defendants SmithKline Beecham

Corporation d/b/a GlaxoSmithKline ("GSK"), Teva Pharmaceutical Industries Ltd., and Teva

Pharmaceuticals USA, Inc. (together, "Teva") (all collectively, "Defendants"). GSK sells

branded Lamictal Tablets and branded Lamictal Chewables, which are indicated to treat epilepsy

and bipolar disorder; Teva sells the generic versions of these products, which are known by their

generic name, "lamotrigine."

Pursuant to Fed. R. Civ. P. 26(f), counsel for the parties met and conferred by telephone

on January 14, 2016 and February 1, 2016 and by email on numerous other occasions.

### 1. Plaintiffs' Introduction

Plaintiffs challenge Defendants' alleged use of a 2005 "pay-for-delay" or "reverse

payment" settlement agreement to delay generic competition for Lamictal Tablets and Lamictal

Chewables. The agreements challenged in this case, and the overcharge damages that allegedly

resulted, settled patent litigation between GSK and Teva over Teva's intention to market and sell

generic lamotrigine. Direct Purchaser Plaintiffs bring claims under Sections 1 and 2 of the

Sherman Act to recover overcharge damages they allegedly paid. Direct Purchaser Plaintiffs

further seek certification of a direct purchaser class pursuant to Fed. R. Civ. P. 23. The Indirect

Purchaser Plaintiffs bring separate actions against the Defendants, asserting state law antitrust,

unfair competition, and unjust enrichment claims, focusing on essentially the same alleged

misconduct.

**2.** **Defendants' Introduction**

Defendants dispute Plaintiffs' characterizations of the facts of this case and deny any wrongdoing. More specifically, Defendants contend that Indirect Purchaser Plaintiffs' claims are barred by the applicable statutes of limitations and that their complaint otherwise fails to state any claim under the various state laws. Defendants further contend that the settlement agreement does not constitute the sort of large and unexplained "reverse payment" subject to antitrust scrutiny, and was procompetitive under the rule of reason. Defendants also contend that no plaintiff suffered impact or antitrust injury, nor sustained any damage, as a result of the allegedly unlawful settlement agreement. Finally, Defendants contend that individual issues predominate such that plaintiffs' claims are not susceptible to proof using classwide evidence, and that the class Indirect Purchaser Plaintiffs purport to represent cannot be ascertained.

## II.   STATUS OF LITIGATION

The direct purchaser Lamictal antitrust litigation began in February 2012. The following is a brief procedural history of the litigation:

| Date | Event |
|---|---|
| February 17, 2012 | LWD files a direct purchaser action under Case No. 12-995 (Case No. 12-995, ECF No. 1). |
| February 28, 2012 | Meijer Distribution, Inc. and Meijer Inc. file a direct purchaser action under Case No. 12-1218 (Case No. 12-1218, ECF No. 1). |
| March 14, 2012 | King Drug files a direct purchaser action under Case No. 12-1607 (Case No. 12-1607, ECF No. 1). |
| May 14, 2012 | Meijer Distribution, Inc. and Meijer Inc.'s direct purchaser action is consolidated into Civil Action No. 12-995 (Case No. 12-995, ECF No. 30; Case No. 12-1218, ECF No. 32). |
| May 16, 2012 | Court enters Case Management Order No. 1, in Civil Action No. 12-995 which, among other things, appointed lead counsel and liaison counsel for the direct purchaser class. (Case No. 12-995, ECF No. 34) |

| | |
|---|---|
| May 30, 2012 | King Drug's direct purchaser action is consolidated into Civil Action No. 12-995 (Case No. 12-1607, ECF No. 19). |
| June 25, 2012 | Direct Purchasers Plaintiffs file a consolidated amended class action complaint (Case No. 12-995, ECF No. 55). |
| August 15, 2012 | Defendants file motions to dismiss the Direct Purchaser Plaintiffs' consolidated amended complaint, and a joint motion to stay discovery in the direct purchaser case in light of the motions to dismiss (Case No. 12-995, ECF Nos. 71-73). |
| September 18, 2012 | Defendants file motions to stay the litigation pending resolution of the Petition for Certiorari filed by defendants in *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012) ("*K-Dur*") (Case No. 12-995, ECF No. 81) |
| October 23, 2012 | The Court denies Defendants' motion to stay the litigations pending resolution of the Petition for Certiorari filed by defendants in *K-Dur* (Case No. 12-995, ECF Nos. 96, 97; Case No. 12-5120). |
| October 26, 2012 | Meijer Distribution Inc. and Meijer Inc. voluntarily dismiss their direct purchaser claims against defendants (Case No. 12-1218, ECF No. 33). |
| November 16, 2012 | The Court orders a stay of discovery in the direct purchaser actions pending resolution of the motions to dismiss (Case No. 12-995, ECF No. 104). |
| December 6, 2012 | The Court grants Defendants' motions to dismiss the direct purchaser actions (Case No. 12-995, ECF Nos. 105, 106). |
| December 21, 2012 | Direct Purchaser Plaintiffs file a Notice of Appeal (Case No. 12-995, ECF No. 107). |
| July 24, 2013 | After the U.S. Supreme Court decides *Federal Trade Commission v. Actavis*, 133 S. Ct. 2223 (2013) ("*Actavis*"), the Third Circuit issues a mandate remanding the direct purchaser appeal to the District Court for reconsideration in light of *Actavis* (Case No. 12-995, ECF No. 112). |
| July 26, 2013 | Direct Purchaser Plaintiffs file a motion for reconsideration of the Court's dismissal of the Direct Purchaser Plaintiffs' consolidated complaint, relying on the Supreme Court's decision in *Actavis* (Case No. 12-995, ECF No. 113). |
| January 24, 2014 | The Court denies the Direct Purchaser Plaintiffs' motion for reconsideration of its dismissal of the Direct Purchaser Plaintiffs' consolidated complaint (Case No. 12-995, ECF Nos. 128, 129). |

| January 27, 2014 | Direct Purchaser Plaintiffs file Notice of Appeal of the Court's denial of their motion for reconsideration (Case No. 12-995, ECF No. 130). |
| October 1, 2015 | The Third Circuit issues a mandate reversing the Court's dismissal of the Direct Purchaser Plaintiffs' consolidated complaint and remands the direct purchaser action to this Court (Case No. 12-995, ECF No. 135). |
| November 3, 2015 | The Court issues a stipulated order setting certain deadlines to govern the litigation (Case No. 12-995, ECF No. 147). |
| November 12, 2015 | RDC files a direct purchaser action under Case No. 15-8034 (Case No. 15-8034, ECF No. 1). |
| November 25, 2015 | Defendants file answers to the consolidated amended complaint (Case No. 12-995; ECF Nos. 152, 153). |
| December 1, 2015 | The Court enters a stipulated order consolidating RDC's direct purchaser action under Civil Action No. 12-995 (Case No. 12-995, ECF No. 157; Case No. 15-8034, ECF No. 10). |

The indirect purchaser Lamictal antitrust litigation began in August 2012. The following is a brief procedural history of the litigation:

| Date | Event |
| --- | --- |
| August 14, 2012 | McAnaney and IBEW Local 38 file an indirect purchaser action under Case No. 12-5120 (Case No. 12-5120, ECF No. 1). |
| October 25, 2012 | IBEW Local 595 files an indirect purchaser action under Case No. 12-6721 (Case No. 12-6721, ECF No. 1). |
| January 15, 2013 | Court enters Case Management Order No. 1, which consolidates the Indirect Purchaser Plaintiff Actions under Case No. 12-5120 (Case No. 12-5120, ECF No. 37; Case No. 12-6721, ECF No. 6) |
| February 5, 2013 | Indirect Purchasers Plaintiffs file a consolidated First Amended Class Action Complaint (Case No. 12-5120, ECF No. 38). |
| March 14, 2013 | The Court enters a stipulated order staying the Indirect Purchaser Plaintiff Actions until the Third Circuit issues its mandate in the appeal of the Direct Purchaser Actions (Case No. 12-5120, ECF No. 40). |
| September 6, 2013 | Defendants file motions to dismiss the consolidated First Amended Class Action Complaint (Case No. 12-5120, ECF Nos. 46, 47). |

| October 7, 2013 | Indirect Purchaser Plaintiffs file opposition to Defendants' Rule 12(b)(6) motions to dismiss (Case No. 12-5120, ECF No. 57). |
| October 15, 2013 | Defendants file replies in support of motions to Rule 12(b)(6) motions to dismiss (Case No. 12-5120, ECF Nos. 58, 59). |
| February 25, 2014 | The Court stays indirect purchaser actions pending decision by Third Circuit on pending appeal of dismissal of Direct Purchaser Plaintiffs' actions |
| October 1, 2015 | The Third Circuit issues a mandate reversing the Court's dismissal of Direct Purchaser Plaintiffs' consolidated complaint and remands the matter to this Court (Case No. 12-995, ECF No. 135). |
| October 26, 2015 | The Court presides over Status Conference for coordinated indirect purchaser and direct purchaser cases. At the status conference, Defendants withdraw their pending motions to dismiss the Indirect Purchaser Plaintiffs' consolidated amended complaint (*see* Case No. 12-995, ECF No. 145; Case No. 12-5120, ECF No. 75). |
| November 3, 2015 | The Court issues a stipulated order setting certain deadlines in this matter, including the service of initial discovery requests. (Case No. 12-5120, ECF No. 147). |
| November 25, 2015 | Defendants file answers to the consolidated First Amended Class Action Complaint (Case No. 12-995, ECF Nos. 81, 82). |
| December 28, 2015 | Defendants' file a joint motion for judgment on the pleadings, seeking dismissal of the indirect purchaser actions (Case No. 12-5120, ECF No. 84). Plaintiffs' opposition is due on 2/11/15; Defendants Reply due 2/26/16). |

## III.   DISCOVERY

### A.   Discovery to Date

Direct Purchaser Plaintiffs served their Rule 26(a) disclosures on July 3, 2012. King Drug served Amended Initial Disclosures on or about November 24, 2015. GSK, RDC, Indirect Purchaser Plaintiffs, and Teva served their Initial Disclosures on November 25, 2015. Also on November 25, 2015, Defendants served joint requests for production of documents on Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs, and Indirect Purchaser Plaintiffs served

requests for production of documents on GSK and Teva.  GSK, Teva, and Indirect Purchaser Plaintiffs responded to those document requests on January 4, 2016.  Direct Purchaser Plaintiffs responded to the document requests served upon it on January 8, 2016.  Direct Purchaser Plaintiffs served Defendants request for production of documents on January 15, 2016.

B.    Proposed Areas of Discovery

The following are the areas the parties assert as proper for discovery.  No party concedes that any particular area is proper for discovery.

1.    **Direct Purchaser Plaintiffs'** Position

Because they bring claims under Sections 1 and 2 of the Sherman Act, the Direct Purchaser Plaintiffs anticipate the need for discovery on liability (including liability under the antitrust Rule of Reason), causation (earlier generic competition absent the challenged agreement), and damages (overcharges).  To this end, on January 15, 2016, Direct Purchaser Plaintiffs served Defendants with requests for the production of documents.  The particular categories into which the document requests fall are as follows:

a.    the patents allegedly covering Lamictal Tablets and/or Lamictal Chewables, and the litigation between GSK and Teva (and any other generic companies) concerning those patents;

b.    GSK's New Drug Applications for Lamictal Tablets and Lamictal Chewables, and periods of regulatory exclusivity that the FDA granted for Lamictal Tablets and Lamictal Chewables;

c.    Teva's (and other generic companies') Abbreviated New Drug Applications for generic versions of Lamictal Tablets and/or Lamictal Chewables;

d.    the challenged settlement agreement between GSK and Teva;

e.    Defendants' dispute over the terms of the settlement agreement;

        f.      FTC and other government agency investigations about the settlement agreement;

        g.      GSK's plans to launch an Authorized Generic version of Lamictal;

        h.      generic competition to Lamictal Tablets and/or Lamictal Chewables;

        i.      GSK's market power over Lamictal; and

        j.      sales and pricing of brand and generic Lamictal to direct purchasers.

**2.    Indirect Purchaser Plaintiffs' Position**

Because they bring claims under state and federal antitrust laws, the state consumer protection laws and state common laws of unjust enrichment, the Indirect Purchaser Plaintiffs anticipate the need for discovery on liability (including liability under the antitrust Rule of Reason), causation (earlier generic competition absent the challenged agreement), and damages (overcharges), consumer deception and unjust enrichment. The particular categories into which Indirect Purchaser Plaintiffs' document requests fall are as follows:

        a.      the patents allegedly covering Lamictal Tablets and/or Lamictal Chewables, and the litigation between GSK and Teva (and any other generic companies) concerning those patents;

        b.      GSK's New Drug Applications for Lamictal Tablets and Lamictal Chewables, and periods of regulatory exclusivity that the FDA granted for Lamictal Tablets and Lamictal Chewables ;

        c.      Teva's (and other generic companies') Abbreviated New Drug Applications for generic versions of Lamictal Tablets and/or Lamictal Chewables;

        d.      the challenged settlement and licensing agreements between GSK and Teva;

      e.      Defendants' dispute over the terms of the settlement and licensing agreements;

      f.      FTC and other government agency investigations about the settlement agreement;

      g.      GSK's plans to launch an Authorized Generic version of Lamictal;

      h.      generic competition to Lamictal Tablets and/or Lamictal Chewables;

      i.      GSK's market power over Lamictal;

      j.      purchases of brand and generic Lamictal by indirect purchasers;

      k.      documents in Defendants' possession, custody or control concerning Plaintiffs and indirect purchaser classes;

      l.      GSK's costs, sales revenues and profits concerning Lamictal;

      m.      Teva's costs, sales revenues and profits concerning branded and generic formulations of Lamictal;

      n.      Prices charged by GSK for Lamictal;

      o.      Prices charged by Teva for branded and generic formulations of Lamictal;

      p.      Payments of money or other benefits from GSK to Teva.

3.    **Defendants' Position.**

Defendants dispute Direct Purchaser Plaintiffs' and Indirect Purchaser Plaintiffs' characterization of the items outlined above, but agree generally that discovery will be needed on liability, causation and damages, which will include discovery as to the patent litigation, the settlement agreement and its terms, the relevant market(s), and the sales and pricing of Lamictal and generic lamotrigine.  In addition, Defendants jointly served discovery requests on Direct

Purchaser Plaintiffs and Indirect Purchaser Plaintiffs that cover, among others, the following relevant and discoverable topics:

a. Plaintiffs' and purported class members' purchases of, sales of, and/or payment for Lamictal Tablets, Lamictal Chewables, and generic lamotrigine, and the contracts that govern those purchases, sales, and/or payments.

b. The degree of risk of alleged overcharge borne by each Plaintiff and the purported class members each Plaintiff represents.

c. Plaintiffs' and purported class members' knowledge of the material terms of the challenged settlement agreement and when Plaintiffs and purported class members gained or should have gained that knowledge.

**B.     Parties' Views on Possibility For Promptly Settling or Resolving Case**

1.     **Direct Purchaser Plaintiffs' Position**

Direct Purchaser Plaintiffs believe a settlement is highly unlikely at this time.  In the Direct Purchaser Plaintiffs' experience, meaningful settlement negotiations in actions such as this occur only after significant discovery has been taken and a trial date assigned. At this time, Direct Purchaser Plaintiffs lack sufficient information regarding the total purchases made by the direct purchaser class during  the relevant period and the amount of overcharge paid. This information will be obtained through discovery.  Direct Purchaser Plaintiffs are willing to participate in good faith settlement discussions.

2.     **Indirect Purchaser Plaintiffs' Position**

Indirect Purchaser Plaintiffs agree that a settlement is highly unlikely at this time. Should Defendants be agreeable to negotiating a settlement of Plaintiffs' claims and the claims of the classes defined in Indirect Purchaser Plaintiffs' First Amended Class Action Complaint,

Plaintiffs would participate in good faith settlement discussions, after discovery has been exchanged on matters affecting any settlement discussions.

### 3. Defendants' Position

Defendants hold the firm belief that Plaintiffs will have difficulty establishing that antitrust scrutiny of the challenged settlement is appropriate and that the challenged settlement violates the federal antitrust and/or other relevant state laws. Even if Plaintiffs were able to establish liability, Defendants believe that Plaintiffs sustained no damage as a result of the settlement agreement and that Plaintiffs' damages periods are severely curtailed by the relevant statutes of limitations. Despite the significant shortcomings in Plaintiffs' cases, Defendants acknowledge that engaging in extensive discovery, motion practice, and trial are costly, and that settlement presents the opportunity to avoid those costs. Defendants accordingly are willing to discuss any reasonable settlement demands made by Plaintiffs at any time.

## IV. CONFIDENTIALITY OF DOCUMENTS

The parties are negotiating a proposed discovery confidentiality order to protect against the disclosure of confidential and/or privileged information in the above-captioned cases. If the parties are unable to reach an agreement by February 15, 2016, they will submit their respective proposals to the Court. Plaintiffs and Defendants have not reached an agreement regarding whether discovery will occur before the Court enters a discovery confidentiality order. Plaintiffs contend that absent agreement between the parties, or prior to the Court's entry of a discovery confidentiality order, all information produced shall be for attorneys' eyes only. Defendants contend that document production should not occur until the Court has entered a confidentiality order, which should include a provision pursuant to Federal Rule of Evidence 502(d) that protects the parties from inadvertent disclosure of privileged material and renders discovery substantially less burdensome.

## V.   SUBJECTS, TIMING, AND PHASING OF DISCOVERY

**A.**   **Direct Purchaser Plaintiffs' Position**

Discovery should begin immediately, and no phasing is required.   The Parties agree that class and merits discovery should not be bifurcated. Adjudicating class certification prior to the completion of fact discovery has often left courts having to guess what the evidence will show at the completion of fact discovery, resulting in the insight that it is better to wait until fact discovery is completed.

Direct Purchaser Plaintiffs disagree with Defendants that recent amendments to Rule 26(b)(1) require or suggest a curtailment of the extent of discovery conducted in  Hatch-Waxman antitrust cases over the last 10 years. Discovery in these cases has always been conducted in a manner proportional to the complexity of the factual and legal issues at stake. Discovery should involve any custodians reasonably necessary to fairly and thoroughly conduct this litigation in accordance with the principles of the Federal Rules of Civil Procedure and the parties' duty of good faith.  Defendants' proposal to limit the number of custodians to no more than eight, with the possibility of only four additional custodians upon a showing of good cause is unreasonable and contrary to their positions  in other similar reverse payment cases; for example:

- In *In re Wellbutrin XL Antitrust Litigation*,  No. 08-cv-2431 (E.D. Pa. 2001) GSK searched the documents and ESI of over 40 GSK custodians, including shared network assets (including its Customer Service System, and its Contract and Discount Operational System);

- In *In re Aggrenox Antitrust Litigation*, No. 3:14-md-02516 (D. Conn. 2015). Teva agreed to search the documents and ESI of over 50 Teva custodians, including 5 shared computer network "drives" (including shared drives for the following Teva departments:

regulatory affairs, finance, research and development, sales and marketing, and purchasing);

- In *In re Niaspan Antitrust Litigation*, No. 2:13-md-2460 (E.D. Pa. 2015). Teva agreed to search the documents and ESI of over 35 Teva custodians, plus shared computer network "drives."

This is typical of these sorts of cases where far more than eight custodians are necessary to capture non-duplicative information critical to legal and factual issues central to reverse payment litigation.

**B.  Indirect Purchaser Plaintffs' Position**

Discovery should begin immediately. The parties agree that class and merits discovery should not be bifurcated.  Adjudicating class certification prior to the completion of fact discovery has often left courts having to guess what the evidence will show at the completion of fact discovery, resulting in the insight that it is better to wait until fact discovery is completed. Indirect Purchaser Plaintiffs agree with Direct Purchaser Plaintiffs that Defendants proposal of eight custodians is insufficient and will disproportionately prejudice the Plaintiffs in their ability to fairly and thoroughly conduct this litigation.

Indirect Purchaser Plaintiffs join with Direct Purchaser Plaintiffs in disagreement with Defendants that recent amendments to Rule 26(b)(1) require or suggest a curtailment of the extent of discovery conducted in Hatch-Waxman antitrust cases over the last 10 years. Discovery in these cases has always been conducted in a manner proportional to the complexity of the factual and legal issues at stake. Discovery should involve any custodians reasonably necessary to fairly and thoroughly conduct this litigation in accordance with the principles of the Federal Rules of Civil Procedure and the parties' duty of good faith.  Defendants' proposal to limit the

number of custodians to no more than eight is unreasonable and contrary to their conduct in other similar reverse payment cases.

**C.    Defendants' Position**

Document discovery should begin when an appropriate confidentiality order and ESI protocol have been entered by the Court, and should occur in a manner that will guarantee that discovery proceeds in accordance with the principles of reasonableness and proportionality, meaning that time and effort should be spent on discovery only where the marginal benefit of the discovery is greater than the marginal cost.  To that end, Defendants propose that fact discovery should involve the custodians most likely to possess documents and/or information that reflect personal or unique knowledge about the subject matter of the litigation, which (to ensure reasonableness and proportionality) should not exceed ten custodians for each of the Direct Purchaser Plaintiffs, the Indirect Purchaser Plaintiffs, GSK, and Teva.  Defendants are also willing to meet and confer with Plaintiffs regarding any additional departmental (rather than custodian-specific) sources that should be searched for responsive documents, and Defendants are amenable to adding custodians and/or departmental files—above and beyond the default ten for each of the Direct Purchaser Plaintiffs, the Indirect Purchaser Plaintiffs, GSK, and Teva— upon a showing of good cause.  In particular, Defendants propose that after receipt and review of information produced from the initial agreed upon custodians and departmental files, a party requesting documents and/or information may, for good cause, request that a party producing documents and/or information search for discoverable material in the files of up to five additional custodians and/or additional departmental files.  A showing of good cause should demonstrate that any additional discovery would be proportional to the issues at stake in the litigation, taking into consideration the costs already incurred and the factors stated in Rule 26(b)(1).  Defendants propose that the parties also agree that absent further agreement of the

parties or a Court order, documents will not be collected from any document/data source that is not reasonably accessible or that is located outside of the United States—an appropriate limitation in this case, which relates to the settlement of a patent infringement dispute that was pending *in this Court* and an alleged lessening of competition in geographic markets limited to the United States.

In addition to ensuring that fact discovery is reasonable and proportional, the parties agree that expert discovery should begin after the completion of fact discovery. Defendants believe that the parties should exchange expert reports regarding class certification issues and should brief and receive decisions from the Court regarding class certification before the parties or the Court expends resources on expert discovery related to the merits of the litigation.

Consistent with the recent amendments to the Federal Rules of Civil Procedure, the Defendants' proposal is designed to "ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." The Sedona Conference, The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 294 (2010). Defendants' proposed step-by-step approach will give effect to the command of Federal Rule of Civil Procedure 1 "to secure the just, speed and inexpensive determination of every action and proceeding" by allowing the parties and the Court to determine whether seeking discovery beyond that already provided will yield a marginal benefit that outweighs its costs.

Although discovery orders in other alleged "reverse payment" cases predate the changes to the Federal Rules, many courts presiding over such cases have nonetheless adopted discovery limitations similar to those Defendants propose.

- *In re Aggrenox Antitrust Litigation*, No. 3:14-md-02516 (D. Conn. 2015). The
  Court limited the initial phase of discovery to custodians within the United States
  and the parties negotiated a list of individual and departmental custodians "to
  reduce the burden of searching the electronic files and data sources only
  tangentially related to the subject matter of the claims and defenses in this
  litigation." (*See* Case No. 3:14-mc-2516, ECF No. 209.)

- *In re Lipitor Antitrust Litigation*, No. 3:12-cv-02389 (D.N.J.). The *plaintiffs
  proposed* to complete document discovery for "key custodians" first. (*See* Case
  No. 3:12-cv-02389, ECF No. 266-1.)

- *In re Wellbutrin SR Antitrust Litigation*, No. 2:04-cv-05525 (E.D. Pa.). Class
  expert discovery occurred before merits expert discovery. (*See* Case No. 2:04-cv-
  05525, ECF No. 61.)

The list of cases outside the "reverse payment" context in which similar provisions have been
adopted is, unsurprisingly, even more expansive. *See, e.g.*, Discovery Order of J. Grimm (D.
Md.) (limiting discovery to 10 custodians in every case, no matter the level of complexity,
including, for example, *Government Employees Ins. Co., et al. v. Ashburn Chiropractic, LLC*,
No. 13-cv-2889, a complex RICO case governed by a 272-paragraph complaint).

The examples that Direct Purchaser Plaintiffs hold out as supposed appropriate
comparators all predate the December 1, 2015 changes to the Federal Rules and are remarkably
distinct from the instant case. This case involves a challenge to *two* terms of *one* settlement
between *two* parties (one brand manufacturer and one generic manufacturer) relating to *one*
product. By contrast, in *In re Wellbutrin XL Antitrust Litigation*, No. 08-cv-2431 (E.D. Pa.
2001), the plaintiffs originally challenged that brand manufacturers brought sham patent

infringement litigation against generic manufacturers.  When the sham claims were dismissed, the plaintiffs changed focus and challenged settlements that resolved six pending patent suits and required the execution of nearly 30 agreements among seven drug manufacturers.  Similarly, in *In re Niaspan Antitrust Litigation*, No. 2:13-md-2460 (E.D. Pa. 2015), the challenged settlement involved an Exclusion Payment Agreement, a Settlement and Licensing Agreement, a Co-Promotion Agreement, and a Licensing and Manufacturing Agreement that applied to multiple successor entities.  And in *In re Aggrenox Antitrust Litigation*, No. 3:14-md-02516 (D. Conn. 2015), plaintiffs' discovery of Teva included discovery from a recently-acquired entity, as well as expansive discovery related to an FTC investigation and concurrent litigation concerning enforcement of an FTC subpoena, neither of which occurred in this case.

Defendants believe that their proposed phased discovery approach—where the most important custodians' documents are located and produced first and where class certification issues are resolved before resources are expended on merits expert work and dispositive motions (that may very well be rendered unnecessary and at the very least will be substantially informed by this Court's decisions on class certification)—provides the best opportunity for resolving this case in a just, speedy, and efficient manner.

**D.    Electronically Stored Information ("ESI") and Form of Document Production**

Discovery in this matter will involve the production of computer-based and digital information, and the parties have met and conferred regarding this issue and have satisfied their obligations set forth in Fed. R. Civ. P. 26(a)(1)(A)(ii) and L. Civ. R. 26.1(d).  The parties have exchanged drafts of proposals governing electronically-stored information to govern the disclosure of such information in this case, and have met and conferred on January 14, 2016 concerning same. If the parties are unable to reach an agreement by February 15, 2016, they will submit their respective proposals to the Court.

E.    Claims of Privilege

The parties recognize that certain documents may be redacted or withheld on the grounds

of privilege or work-product protection.

1.    Privilege Logs

a.    **Plaintiffs' Position**

The parties shall prepare a log identifying documents redacted or withheld on the grounds

of privilege.  The log shall, consistent with Fed. R. Civ. P. 26(b)(5) L. Civ. R. 34.1, and the

parties' ESI and Discovery Protocol, provide sufficient detail to enable the party receiving the log to

assess the validity of the privilege claim for each entry without disclosing the protected information,

and shall specifically identify the withheld or redacted document by Bates number, privilege

asserted, information sufficient to identify the document (date, type of document, the sender, the

recipient, any individuals cc'ed, the subject, the presence of an attachment), the custodian(s), and

a brief description of the subject matter of the document.  The log shall be produced in

spreadsheet form (Excel, .xls, or .txt). The log shall be provided within 30 days of each rolling

production.

b.    **Defendant's** Position

Defendants agree with Plaintiffs regarding privilege logs except in the following respects.

Most importantly, Defendants—who possess the vast majority of documents to be reviewed and

produced in this case—wish to ensure consistency in their privilege review and to withhold as

few documents as possible for privilege reasons.  Experience shows that it is most efficient to

analyze all of the documents that may fall into a particular category of privilege at one time.

That analysis can be completed only when a party has substantially completed its review of

documents and knows which documents fall into particular privilege categories.  Defendants

therefore propose that the parties exchange privilege logs 30 days after substantial completion of

their respective productions. This allows more than sufficient time under the parties' proposed schedules to resolve any challenges to privilege calls prior to the close of fact discovery.

Defendants also disagree with some of Plaintiffs' proposed technical specifications. First, Bates numbers cannot be provided for documents that are withheld. Defendants therefore propose that a control number should be provided for such documents instead. Second, Defendants believe it would be unreasonable and unduly burdensome to include email subject lines in that log. E-mail subject lines are often privileged and/or contain privileged information so that, under Plaintiffs' proposal, the producing party would need to make burdensome (and otherwise unnecessary) redactions to its own log. The parties can avoid that burden by relying instead on the description of the subject matter of each entry, which Defendants agree should be provided. Finally, Defendants believe that producing privilege logs in PDF format, rather than in spreadsheet form, ensures that the privilege logs will not be edited after their production and does not diminish or otherwise impact the usefulness of the privilege logs, as PDFs can be produced in searchable form and/or be made searchable by the receiving party.

### 2. Challenges to Privilege Designations

The parties propose that any party may challenge the privilege designation of any document by notifying the other party in writing of the document and the basis for the challenge. Any party receiving a challenge shall respond within fourteen (14) days whether the challenged document was correctly designated as privileged. Documents incorrectly identified and withheld or redacted under claims of privilege will be removed from the log and produced or reproduced without redactions within fourteen (14) days of a party receiving the challenge. If the parties cannot agree on the propriety of the designation, the challenging party may submit the disagreement to the Court.

F.     Limitations on Discovery

1.     **Direct Purchaser Plaintiffs' Position**

Direct Purchaser Plaintiffs believe that the presumptive number of interrogatories (25) is sufficient for this case. Direct Purchaser Plaintiffs, however, believe that the presumptive number of depositions is insufficient in this case, and propose the following limitations: (1) Plaintiffs as a group may take no more than twenty (20) depositions of witnesses affiliated with GSK; (2) Plaintiffs as a group may take no more than twenty (20) depositions of witnesses affiliated with Teva; (3) Plaintiffs as a group may take no more than ten (10) non-party depositions; (3) Defendants as a group may take no more than six (6) depositions of any witnesses affiliated with a Plaintiff; and (4) Defendants as a group may take no more than ten (10) non-party depositions, nor any discovery from any putative absent class members without obtaining prior approval from the Court. Each Rule 30(b)(6) deposition shall count against the per-side deposition limitation. Any Rule 30(b)(6) deposition shall count as one deposition no matter the number of witnesses designated to testify. In the event that a Rule 30(b)(6) deposition exceeds 6.5 hours, the additional hours shall count as an additional deposition or the pro rata portion of an additional deposition. Subject to the per-side deposition limitation, the parties shall not be precluded from seeking the deposition of a Rule 30(b)(6) designee in his or her individual capacity. Plaintiffs disagree with Defendants' proposed limitations on the number of depositions. In previous antitrust pharmaceutical litigations in this district and elsewhere, Defendants have been far more aligned with this proposal, for example:

- In *In re. K-Dur Antitrust Litigation* MDL No. 1419 (D.N.J. 2001), over 25 depositions of the defendants' fact witnesses were taken, excluding depositions of experts;

- In *In re Neurontin Antitrust Litigation* MDL No. 1479 (D.N.J. 2002), over 17 depositions of a single defendant were taken

- In *In re. Remeron Direct purchaser Antitrust Litigation* No. 03-cv-0085 (FSH) (D.N.J. 2003), Direct Purchaser Class Plaintiffs conducted approximately 40 fact witness depositions.

2.    **Indirect Purchaser Plaintiffs' Position**

Indirect Purchaser Plaintiffs have not yet determined whether they will seek to expand the presumptive limits on the number of interrogatories set forth in FED. R. CIV. P. 33, and preserve their rights to seek agreement, or pending lack of agreement to file a motion, seeking to expand the presumptive limits.

Indirect Purchaser Plaintiffs, however, believe that the presumptive number of depositions is insufficient in this case, and propose the following limitations: (1) Plaintiffs as a group may take no more than twenty (20) depositions of witnesses affiliated with GSK; (2) Plaintiffs as a group may take no more than twenty (20) depositions of witnesses affiliated with Teva; (3) Plaintiffs as a group may take no more than ten (10) non-party depositions; (3) Defendants as a group may take no more than six (6) depositions of any witnesses affiliated with a Plaintiff; and (4) Defendants as a group may take no more than ten (10) non-party depositions. Each Rule 30(b)(6) deposition shall count against the per-side deposition limitation. Any Rule 30(b)(6) deposition shall count as one deposition no matter the number of witnesses designated to testify. In the event that a Rule 30(b)(6) deposition exceeds 6.5 hours, the additional hours shall count as an additional deposition or the *pro rata* portion of an additional deposition. Subject to the per-side deposition limitation, the parties shall not be precluded from seeking the deposition of a Rule 30(b)(6) designee in his or her individual capacity.

3.    **Defendants' Position**

Defendants agree with the Direct Purchaser Plaintiffs that the presumptive number of interrogatories (25) is sufficient for this case.  Defendants disagree with both Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs, however, that the presumptive number of depositions is insufficient in this case.  Defendants propose the following:  (1) Plaintiffs as a group may take up to ten (10) depositions of witnesses affiliated with GSK; (2) Plaintiffs as a group may take up to ten (10) depositions of witnesses affiliated with Teva; (3) Defendants as a group may take up to ten (10) depositions of any witnesses affiliated with each Direct Purchaser Plaintiff; and (4) Defendants as a group may take up to ten (10) depositions of any witnesses affiliated with each Indirect Purchaser Plaintiff.  The parties' categorized proposals make it easy to miss that Plaintiffs' plan in fact provides for *fewer* depositions (76) than Defendants' plan (80), but disproportionally burdens Defendants with 40 depositions.  Allowing Plaintiffs to take 20 depositions of witnesses associated with *each defendant* will make discovery much less efficient. As the Manual for Complex Litigation notes, "[d]epositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation."  Manual for Complex Litigation (Fourth) § 11.422 (2004).

Defendants' proposal is consistent with case management orders imposed by other courts in similar purported "reverse payment" cases.  In *In re Niaspan Antitrust Litigation*, No. 13-md-2460 (E.D. Pa.), the court ordered that "[e]ach side (*i.e.*, all Direct Purchaser Plaintiffs, Individual Retailer Plaintiffs and End-Payor Plaintiffs collectively, and all Defendants collectively" could "take up to twenty-five (25) depositions."  (Case No. 13-md-2460, ECF No. 251).  Defendants' plan here proposes nearly the same number even though *Niaspan* was a substantially more complicated case than this one: the plaintiffs there challenged a set of three agreements between at least four pharmaceutical manufacturers related to two different drugs.

Similarly, although Plaintiffs claim that *In re K-Dur Antitrust Litigation*, No. 01-1652 (D.N.J.),

supports their position regarding deposition limitations, the *K-Dur* plaintiffs took a *total* of 25

depositions of *multiple* defendants' fact witnesses. Like *Niaspan*, *K-Dur* involved a challenge to

not only a license that allowed the generic manufacturer to sell a generic form of K-Dur before

the patent expiration, but also licenses to make and sell several other pharmaceutical products

and a cash payment from the generic company to the brand company in return. At bottom,

Defendants here propose approximately the same number of depositions that the *Niaspan* and *K-

Dur* courts found appropriate in far more complicated cases. Indeed, Defendants propose exactly

the same number of depositions that Judge Robreno recently found appropriate in a complex

dispute between GSK and Teva regarding Wellbutrin XL. *See GlaxoSmithKline LLC v. Teva

Pharmaceuticals USA, Inc.*, No. 13-cv-726 (E.D. Pa.).

 Besides *K-Dur*, Direct Purchaser Plaintiffs cite *In re Neurontin Antitrust Litigation*, No.

02-1390 (D.N.J.), and *In re Remeron Antitrust Litigation*, No. 03-0085 (D.N.J.), to support their

contention that this case calls for 20 depositions of witnesses affiliated with each defendant.

Neither case is apposite, for neither is a purported "reverse payment" case. In *Remeron*, the

plaintiffs claimed that the defendants wrongfully listed a patent with the FDA and filed baseless

patent infringement actions—conduct that could understandably necessitate more discovery than

a single settlement between two parties memorialized in signed documents. The *Neurontin* case

similarly involved sham patent litigation allegations related to three different patent infringement

suits. *In re Wellbutrin XL Antitrust Litigation*, No. 08-cv-2431 (E.D. Pa. 2001) also started as

sham litigation case. When the case changed focus, the court found that only 6 depositions per

side were needed for the purported "reverse payment" portion. (Case No. 08-cv-2431, ECF No.

537).  *Niaspan* and *K-Dur* provide much better comparators than the cases Plaintiffs cite and support the Defendants' position.

Contrary to the Plaintiffs' position, Defendants do not believe that the Court needs to determine at this juncture how many non-party depositions, including depositions of (or any discovery from) putative absent class members, each party should be permitted to take. Defendants agree that each Rule 30(b)(6) deposition shall count against the per-side deposition limitation and that any Rule 30(b)(6) deposition shall count as one deposition no matter the number of witnesses designated to testify.  Defendants also agree that in the event that a Rule 30(b)(6) deposition exceeds 6.5 hours, the additional hours shall count as an additional deposition or the pro rata portion of an additional deposition.  Finally, Defendants agree that subject to the per-side deposition limitation, the parties shall not be precluded from seeking the deposition of a Rule 30(b)(6) designee in his or her individual capacity.

**G.**     **Arbitration, Mediation, and Special Master**

The parties agree that, at this time, it does not appear that this matter can be resolved through voluntary arbitration pursuant to L. Civ. R. 201.1 or mediation pursuant to L. Civ. R. 301.1.  The parties also agree that, at this time, it does not appear that appointment of a special master or use of another special procedure is warranted.

## VI.    PROPOSED SCHEDULE

**A.     Plaintiffs' Position**

Defendants contend that any agreement on the proposed fact discovery deadlines is contingent on the parties being able to arrive at an agreement on the number of custodians whose documents are to be searched and the number of depositions taken.  Plaintiffs believe that position is unreasonable and that fact discovery in this case should be  completed in one year.

Any party retains the right to seek an extension for good cause shown or on consent subject to

Court approval.

| | |
|---|---|
| Deadline to amend pleadings, add parties, claims or defenses except upon a showing of good cause. | August 15, 2016 |
| Document production will occur on a rolling basis. Parties and non-parties must complete their production of information, documents and/or things by this date | January 9, 2017 |
| Close of fact discovery. All discovery requests must be served to be answerable by this date, except for requests for admissions pertaining to the admissibility of evidence, to which this deadline does not apply. | March 9, 2017 |
| Plaintiffs serve expert reports and file motions for class certification.[1] Defendants may, if they wish, depose any expert whose report has been submitted on the material in that report during the ensuing 60 days. | April 4, 2017 |
| Deposition of Plaintiffs' experts. | Completed by June 5 |
| Defendants serve opposition expert reports. Defendants file oppositions to motions for class certification. Plaintiffs may, if they wish, depose any expert whose report has been submitted on the material contained in that report during the ensuing 60 days. | June 6, 2017 |
| Deposition of Defendants' experts. | Completed by August 7 |
| Parties to serve rebuttal expert reports. Direct Purchaser Plaintiffs file replies in support of motions for class certification. The parties may, if they wish, depose any expert whose report has been submitted on the material contained in that report during the ensuing 30 days. An additional 3.5 hours of deposition testimony may be taken of an expert who has already been deposed regarding his or her opening expert report. | August 8, 2017 |
| Close of expert discovery. | September 6, 2017 |
| Rule 56 and Daubert motions to be filed.[2] | October 3, 2017 |
| Rule 56 and Daubert oppositions to be filed. | December 5, 2017 |
| Rule 56 and Daubert replies to be filed. | January 23, 2018 |
| Hearing on any Rule 56 and Daubert motions. | TBD |
| Joint final pretrial order to be filed. | TBD |
| Final Pretrial Conference. | TBD |
| Trial. | TBD |

---

[1] The parties will negotiate in good faith on the subject of the length of briefs subject to Court approval.

[2] See fn. No. 1.

All parties have agreed to the same schedule for the direct and indirect purchaser actions, while acknowledging that differences in the respective actions may in the future require revisions affecting one or both actions.

**B.**     **Defendants' Position**

Plaintiffs and Defendants agree on the timing of the schedule through class certification, provided that (1) there is a reasonable limit on the number of document custodians and depositions such that the parties are able to complete fact discovery in the proposed one-year period; and (2) that experts are made available for deposition during the 7 to 28 day period after serving their reports, so as to allow sufficient time to prepare both a responsive report and responsive brief.

Other features of the Plaintiffs' scheduling proposal are unsupportable and/or untenable. For example, Plaintiffs seek to limit Defendants' ability to change its defenses after August 15, 2016.  Nothing in the Federal Rules or norms of federal practice suggests that a defendant may not alter its defensive strategy after an arbitrary date.  Second, Plaintiffs propose that the parties serve class expert reports, serve merits expert reports, and prepare and file class certification briefs in 60-day windows.  Given the number of experts that will likely testify in this case and that the parties likely will retain different merits and class experts, 60 days is simply not enough time to accomplish those tasks.  Moreover, as explained above, Defendants do not believe that simultaneous class and merits expert discovery is an efficient or necessary use of this Court's or the parties' resources.  Finally, conducting all of the tasks Plaintiffs propose in 60-day windows will be all the more difficult if, as Plaintiffs propose, they can wait until the day before Defendants' expert reports and responsive briefs are due to produce their experts for deposition.

Defendants propose the following alternative schedule.

| Event | Date |
|---|---|
| Deadline to amend complaints and add parties, except upon a showing of good cause, and to amend answers, except upon a showing of good cause or if an answer is amended in response to an amended complaint | March 15, 2016 |
| Parties must complete their production of information, documents and/or things by this date. All requests for production of documents must be served to be answerable by this date. | January 9, 2017 |
| Close of fact discovery. All discovery requests must be served to be answerable by this date, except for party requests for party production, which must be served and answerable by January 9, 2017, and requests for admissions pertaining to the admissibility of evidence, to which this deadline does not apply | March 9, 2017 |
| Plaintiffs serve their expert reports related to class certification and file motions for class certification. | April 4, 2017 |
| Plaintiffs shall make their class certification experts available for deposition during this window. | April 11, 2017 to May 2, 2017 |
| Defendants serve their responsive expert reports related to class certification and file oppositions to motions for class certification.. | June 6, 2017 |
| Defendants shall make their class certification experts available for deposition during this window. | June 13, 2017 to July 5, 2017 |
| Plaintiffs serve rebuttal expert reports related to class certification and reply brief in support of motions for class certification. The parties may, if they wish, depose any expert whose class certification rebuttal report has been submitted on the material contained for the first time in that report during the ensuing 30 days, no matter whether that expert has already been deposed. An additional 3.5 hours of deposition testimony may be taken of an expert who has already been deposed regarding his or her opening expert report. | August 8, 2017 |
| Date by which all class certification expert depositions must be complete and by which Defendants shall, at their discretion, serve any additional expert reports or amend expert reports already served in response to any material contained for the first time in rebuttal expert reports related to class certification. | September 15, 2017 |
| To the extent the parties agree at this junction that mediation may be beneficial to the resolution of outstanding claims, mediation shall occur during this window. | October 6, 2017 to November 5, 2018 |
| Plaintiffs serve merits expert reports, including any damages expert reports other than those deemed by counsel necessary to class certification. | 60 days after the Court issues order(s) on class certification |
| Plaintiffs shall make their merits experts available for deposition during this window. | 7 to 28 days after the Plaintiffs serve merits expert reports. |

| | |
|---|---|
| Defendants serve opposition expert reports on merits issues. | 60 days after the Plaintiffs serve merits expert reports |
| Defendants shall make their expert available for deposition during this window. | 7 to 21 days after the Defendants serve opposition expert reports on merits issues |
| Plaintiffs serve rebuttal expert reports on merits issues. The parties may, if they wish, depose any expert whose merits rebuttal report has been submitted on the material contained for the first time in that report during the ensuing 30 days, no matter whether that expert has already been deposed. An additional 3.5 hours of deposition testimony may be taken of an expert who has already been deposed regarding his or her opening expert report. | 30 days after the Defendants serve opposition expert reports on merits issues |
| Date by which all merits expert depositions must be complete and by which the parties that served opposition experts reports on merits issues shall, at their discretion, serve any additional expert reports or amend expert reports already served in response to any material contained for the first time in rebuttal expert reports related to merits issues. | 30 days after Plaintiffs serve rebuttal expert merits issues |
| Rule 56 and Daubert motions to be filed. | 20 days after the date by which all merits expert depositions must be complete |
| Rule 56 and Daubert oppositions to be filed. | 60 days after the Rule 56 and Daubert motions are filed |
| Rule 56 and Daubert replies to be filed. | 45 days after Rule 56 and Daubert oppositions are filed |
| Hearing on any Rule 56 and Daubert motions. | TBD |
| Joint final pretrial order to be filed. | TBD |
| Final Pretrial Conference. | TBD |
| Trial. | TBD |

## VII.   COORDINATION AMONG THE DIRECT AND THE INDIRECT PURCHASER ACTIONS

Plaintiffs and Defendants agree that coordination of the Direct Purchaser and Indirect Purchaser actions is appropriate to the extent possible and feasible, with an eye toward avoiding duplication of efforts and expenses.

Dated: February 3, 2016

s/ Peter S. Pearlman

GARWIN GERSTEIN & FISHER LLP
Bruce E. Gerstein
Joseph Opper
Ephraim Gerstein
88 Pine Street, 10th Floor
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

PETER S. PEARLMAN
COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
Peter S. Pearlman
Park 80 Plaza West-One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Tel: (201) 845-9600
psp@njlawfirm.com

ODOM & DES ROCHES, L.L.P.
Stuart E. Des Roches
Andrew W. Kelly
Chris Letter
650 Poydras Street
Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

SMITH SEGURA & RAPHAEL, LLP
David C. Raphael, Jr.
Erin R. Leger
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741

HEIM, PAYNE & CHORUSH, L.L.P.
Russell Chorush
Miranda Jones
600 Travis, Suite 6710
Houston, Texas 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
*Attorneys for Direct Purchaser Plaintiffs Louisiana Wholesale Drug Co., Inc. and King Drug Company of Florence, Inc.*

Peter R. Kohn
Joseph T. Lukens
Andrew Coyle
FARUQI & FARUQI, LLP
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com

David F. Sorensen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
dsorensen@bm.net
*Attorneys for Rochester Drug Co-operative, Inc.*

*/s/ Michael J. Debenedictis*
DEBENEDICTIS & DEBENEDICTIS LLC
Michael J. Debenedictis
mjd@debenedictislaw.com
125 Kings Highway West
Haddonfield, NJ 08033
Telephone: (856) 795-2101

*Interim Class Liaison Counsel for Indirect Purchasers*

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
Christopher M. Burke (*pro hac vice*)
cburke@scott-scott.com
Walter W. Noss (*pro hac vice*)
wnoss@scott-scott.com
Jennifer S. Scott (*pro hac vice*)
jscott@scott-scott.com
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
Joseph P. Guglielmo (*pro hac vice*)
jguglielmo@scott-scott.com
Donald A. Broggi
dbroggi@scott-scott.com
The Chrysler Building
405 Lexington Ave., 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334

TUSA P.C.
Joseph S. Tusa (*pro hac vice*)
joseph.tusapc@gmail.com
1979 Marcus Avenue, Ste. 210
Lake Success, NY 11042
Telephone: (516) 622-2212
Facsimile:  (516) 706-1373

**SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP**
Todd M. Schneider
tschneider@schneiderwallace.com
Jason H. Kim
jkimschneiderwallace.com
180 Montgomery Street, Suite 2000
San Francisco, CA 94109
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

**SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP**
Garrett W. Wotkyns
gwotkynsschneiderwallace.com
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Telephone: (480) 428-0144
Facsimile: (866) 505-8036

**LEONARD CARDER LLP**
Aaron Kaufmann
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174

*Interim Class Counsel of Indirect Purchasers*

/s/ Michael E. Patunas
PATUNAS TARANTINO LLC
Michael E. Patunas
Mayra V. Tarantino
24 Commerce Street, Suite 606
Newark, NJ 17102
(201) 390-0803
mpatunas@patunaslaw.com
mtarantino@patunaslaw.com

KIRKLAND & ELLIS LLP
Jay P. Lefkowitz, P.C. (pro hac vice)
Devora W. Allon (pro hac vice)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
lefkowitz@kirkland.com
devora.allon@kirkland.com

Karen N. Walker, P.C. (pro hac vice)
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
kwalker@kirkland.com

*Attorneys for Defendants Teva
Pharmaceuticals USA, Inc., and Teva
Pharmaceutical Industries Ltd.*

/s/ Douglas S. Eakeley
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
fax: 973.597.2400

Douglas S. Eakeley
tel: 973.597.2348
deakeley@lowenstein.com

Joseph A. Fischetti
tel: 973.422.6506
jfischetti@lowenstein.com

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
fax: 215.981.4750

Barbara Mather
tel: 215.981.4895
matherb@pepperlaw.com

Robin P. Sumner
tel: 215.981.4652
sumnerr@pepperlaw.com

Lindsay D. Breedlove
tel: 215.981.4581
breedlovel@pepperlaw.com

Melissa Hatch O'Donnell
tel: 215.981.4060
odonnelm@pepperlaw.com

T. Stephen Jenkins
tel: 215.981.4743
jenkinst@pepperlaw.com

*Counsel for Defendant
GlaxoSmithKline LLC*